**Colin F. MacCOLLOM, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 73–1659.**

United States Court of Appeals,
Ninth Circuit.

Aug. 2, 1974.

Rehearing and Rehearing En Banc
Denied Feb. 26, 1975.

John A. Strait (argued), Public Defender, Seattle, Wash., for appellant.

Charles F. Mansfield (argued), Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and TAYLOR,[*] District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Colin F. MacCollom appeals from the dismissal of his action for declaratory and injunctive relief. He seeks prepara-

* The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho.

tion, at government expense, of a verbatim transcript of his criminal trial to assist him in the preparation of a postconviction motion under 28 U.S.C. § 2255. We hold that he has the right to such a transcript, reverse, and remand the case.

MacCollom was convicted in the United States district court and was confined in 1970. Because he took no appeal, MacCollom did not request a transcript until March 1972, when he filed a "motion for transcript in forma pauperis." The clerk of the court notified MacCollom that until he filed a motion under 28 U.S.C. § 2255, the court had no power to act on his request. MacCollom then filed his complaint for declaratory and injunctive relief. His motion to proceed in forma pauperis was granted, and an attorney was appointed to assist him; but, on the government's motion, the district court dismissed the action for failure to state a claim upon which relief could be granted. Counsel has candidly argued that he cannot represent to the court that specific constitutional grounds for relief exist until after he has seen a transcript. The present state of the law seems to tell him that he must discover some constitutional claim and assert it before he can see the transcript.

The right of an indigent to receive at government expense a stenographic transcript of his criminal trial has been the subject of a number of Supreme Court decisions over the past eighteen years.[1] Beginning with Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court has consistently held that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." 351 U.S. at 19, 76 S. Ct. at 591. Later cases, reasoning from equal-protection and due-process principles have expanded the indigent's right to a free transcript for use in a direct appeal. Eskridge v. Washington State Board of Prison Terms & Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (per curiam), held that a trial transcript, which under Washington procedure had to be filed with an appeal, could not be denied merely because the trial judge did not believe that an appeal would promote justice. Five years later, in Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), a revised Washington procedure came up for review. There, the Court held that a trial judge's determination that an indigent's appeal was frivolous could not be substituted for appellate examination of a record full enough for the appellate court to draw its own conclusions. The next year, in Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), the Court held on statutory grounds that in the federal courts an attorney newly appointed on appeal was entitled to a full trial transcript. Five years later, the Court extended *Griffin* to include an appeal from a drunken-driving conviction. Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969) (per curiam). Finally, in Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), the Court reaffirmed its earlier holdings, stating that though a state need not provide an indigent with a trial transcript if other alternatives would provide him with adequate and effective appellate review, when the appellant shows a colorable need for the full transcript, the state has the burden of showing that only part of it or some substitute would be adequate.

Meanwhile, *Griffin's* constitutional principle was being extended to appeals from the denial of collateral relief. In Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), the Court held that a state prisoner was entitled to an appeal from the denial of a writ of error *coram nobis* in state court, even though the public defender who represented him at the time that the writ was

1. *See generally* Note, The Indigent's Right to a Transcript of Record, 20 Kan.L.Rev. 746 (1972). This opinion has drawn heavily on the research and analysis of this excellent student note.

denied believed that an appeal was useless and refused to order the required transcript. Two years later, in Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), the Court held that an indigent state habeas petitioner was entitled to a transcript of the hearing on his petition in order to appeal a denial of the writ. (Because a full transcript of the hearing was available, the Court did not consider whether a substitute would suffice.) Finally, in Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969), the Court held that where state law did not permit an unsuccessful habeas applicant to appeal directly but did permit him to file a new petition at the next appellate level, the state must furnish a verbatim record of the first habeas hearing, absent a showing that an alternative would be an adequate substitute.

Other Supreme Court decisions conferred the rights to a free transcript of a preliminary hearing, Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam), and stated that where an adequate alternative did not exist the defendant was entitled to a transcript of a mistrial. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).

■ Where a state prisoner petitions federal courts for habeas corpus relief, the federal district court must hold an evidentiary hearing to make its own findings of fact and conclusions of law, if the petitioner did not receive a full and fair hearing on the merits of his claim in state court. In order to determine whether such a hearing was provided, the district court has the power to compel production of the complete state-court record, including a transcript of the testimony. Hence, a state prisoner who files a federal habeas petition is entitled to that portion of the state-court transcript relevant to a determination of the facts contested by him. *See* Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C. § 2254(e).

The Supreme Court has not specifically decided whether an indigent state prisoner, who has not stated precisely what errors he claims in his state-court conviction, must be provided with a free transcript of his original trial for use in a collateral proceeding. That question was raised, but not reached, in Wade v. Wilson, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970).[2] There, the petitioner had used a borrowed transcript on his direct appeal, and, before the Court would decide whether a free copy must be supplied for purposes of the habeas proceeding, it required him to show that a transcript could not again be borrowed.

The precise question before this court —whether an indigent federal prisoner is entitled to a free transcript of his criminal trial to assist him in the preparation of a postconviction motion under 28 U.S.C. § 2255—has not been decided by the Supreme Court. Other federal appellate courts, however, have held that a federal prisoner is not entitled to a free transcript under these circumstances, in the absence of a showing of need for the specific portion of the transcript which he requests. *See, e. g.,* Cowan v. United States, 445 F.2d 855 (5th Cir. 1971); Bentley v. United States, 431 F.2d 250 (6th Cir. 1970), cert. denied, 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971); Benthiem v. United States, 403 F.2d 1009 (1st Cir.

---

2. "Petitioner argues that in any event, contrary to the Court of Appeals, the District Court was correct in holding that because 'it may not be possible to pinpoint . . . alleged errors in the absence of a transcript,' petitioner was entitled to a transcript for use in petitioning for habeas corpus even though he did not specify what errors he claimed in his conviction. To pass on this contention at this time would necessitate our decision whether there are circumstances in which the Constitution requires that a State furnish an indigent state prisoner free of cost a trial transcript to aid him to prepare a petition for collateral relief. This is a question of first impression which need not be reached at this stage of the case * * *." Wade v. Wilson, 396 U.S. at 286, 90 S.Ct. at 504.

1968), cert. denied, 396 U.S. 945, 90 S. Ct. 384, 24 L.Ed.2d 247 (1969); United States v. Shoaf, 341 F.2d 832 (4th Cir. 1964).[3]

This circuit did hold in Wilson v. Wade, 390 F.2d 632 (9th Cir. 1968), that an indigent state prisoner was not entitled to a free transcript in order to search for some basis for postconviction relief. We relied then upon what we conceded may have been dicta in McGarry v. Fogliani, 370 F.2d 42, 44 (9th Cir. 1967). *See* Wilson v. Wade, 390 F. 2d at 634 n. 1. However, our judgment in Wilson v. Wade was vacated by the Supreme Court, and the case was remanded to the district court for further proceedings. 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970).

Taylor v. United States, 238 F.2d 409 (9th Cir. 1956), cert. denied, 353 U.S. 938, 77 S.Ct. 817, 1 L.Ed.2d 761 (1957), is the only decision of this court involving the right of an indigent prisoner to obtain a free transcript for use in a 2255 proceeding. We denied the petitioner's request there, but that decision was handed down in 1956 only months after Griffin v. Illinois had been decided and before most of the case law in the free-transcript field had been developed. To the extent that *Taylor* may have been stating a constitutional doctrine, it has been thoroughly undercut by subsequent higher authority.

Moreover, *Taylor* is inconsistent with the prevailing rule in other circuits that an indigent prisoner in a 2255 proceeding is entitled to a free transcript if he can make a particularized showing of need. In *Taylor* the petitioner alleged that the government knowingly used perjured testimony to procure his conviction and that he was denied the effective assistance of counsel. Under cur-

rent practice at least the first allegation probably would be sufficient to require production of the relevant portions of the transcript. *Cf.* United States v. McDowell, 305 F.2d 12, 14 (6th Cir.), cert. denied, 371 U.S. 927, 83 S.Ct. 296, 9 L.Ed.2d 508 (1962).

Congress had endorsed the rule, initially adopted by the Fourth Circuit, that an indigent federal prisoner must make a particularized showing of need before he can obtain a free transcript of his criminal trial. Title 28 U.S.C. § 753(f) provides:

" * * * Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal * * *."

However, for us to grant MacCollom the relief he seeks would not require us to declare section 753(f) unconstitutional. The second quoted sentence merely authorizes under certain circumstances the payment of fees for transcripts furnished in § 2255 proceedings. The section does not prohibit courts from also requiring the government to supply an imprisoned indigent with a free transcript before he files a 2255 motion. Such a court order would sim-

---

3. Other federal appellate courts have held that a state prisoner is not entitled to a free transcript, without a showing of need, for use in preparing a petition for collateral relief. *See, e. g.,* Jones v. Superintendent, 460 F.2d 150, 153, petition for rehearing denied, 465 F.2d 1091, (4th Cir. 1972), cert. denied, 410 U.S. 944, 93 S.Ct. 1380, 35 L. Ed.2d 611 (1973); Ellis v. State of Maine, 448 F.2d 1325, 1327 (1st Cir. 1971); Chavez v. Sigler, 438 F.2d 890 (8th Cir. 1971); Hines v. Baker, 422 F.2d 1002, 1006–1007 (10th Cir. 1970).

ply fill a constitutional deficit not addressed by the statute.

The sentence in 28 U.S.C. § 753(f) referring to proceedings brought under § 2255 was added in 1965 (Act of Sept. 2, 1965, Pub.L.No.89–167, 79 Stat. 647) to resolve a division of opinion among the circuits as to whether federal courts had the power, under the preceding sentence referring to habeas corpus petitions, to order transcripts for use in section 2255 proceedings. *Compare* United States v. Glass, 317 F.2d 200 (4th Cir. 1963), *with* United States v. Stevens, 224 F.2d 866 (3rd Cir. 1955). (*See* Sokol, The Availability of Transcripts for Federal Prisoners, 2 Am.Crim.L.Q. 63 (1964), which traces the history of section 753(f).) Notably, however, the § 2255 provision, unlike the habeas corpus provision, requires certification by the trial judge or a circuit judge that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.[4]

At the time that this certification requirement was codified, it probably was an accurate reflection of Supreme Court case law. *See* Benthiem v. United States, 403 F.2d at 1011. The requirement that the judge certify that the suit or appeal was nonfrivolous was hardly more than a requirement that he state affirmatively what he necessarily held by implication when he granted leave to proceed in forma pauperis. After Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 88 L.Ed.2d 21 (1962), anyone allowed to proceed in forma pauperis can be presumed to have asserted nonfrivolous grounds. The second requirement —that the judge certify that the transcript was needed to decide the issue tendered by the prisoner—was more significant, but probably rested on the line of Supreme Court cases which appeared to condition an indigent's right to a free transcript on a successful showing of need. *See* Draper v. Washington, 372 U.S. at 496, 83 S.Ct. 774; Lane v. Brown, 372 U.S. at 480, 83 S.Ct. 768; Eskridge v. Washington State Board of Prison Terms & Paroles, 357 U.S. at 215–216, 78 S.Ct. 1061; Griffin v. Illinois, 351 U.S. at 16, 76 S.Ct. 585.

In recent years, however, the requirement of a particularized showing of need has been severely undercut both by the march of events and by decisions of the Supreme Court. In 1964, even before the sentence referring to the provision of free transcripts in § 2255 proceedings was added to section 753(f), four members of the Supreme Court advocated that full transcripts be provided in all federal criminal cases to indigent defendants who seek to prosecute an appeal. Hardy v. United States, 375 U.S. at 282, 84 S.Ct. 424 (concurring opinion). In an opinion concurred in by three other justices, Mr. Justice Goldberg emphasized:

> "As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law * * *. Anything short of a complete transcript is incompatible with effective appellate advocacy." 375 U.S. at 288, 84 S.Ct. at 431.

Five years later, in Gardner v. California, *supra,* which held that an

---

4. What Congress intended by this certification qualification is not clear. While the bill was under consideration, then Deputy Attorney General Ramsey Clark, in a letter to the Chairman of the Committee on the Judiciary, questioned this distinction between habeas corpus and 2255 proceedings: "The reason for this distinction is not apparent if the motion remedy under section 2255 is to be a remedy commensurate with a writ of habeas corpus." S.Rep.No.617, 89th Cong., 1st Sess., 1965 U.S.Code Cong. & Admin. News 2916, 2920–2921. Mr. Justice Blackmun has suggested that the Committee apparently gave little consideration to the distinction. Blackmun, Allowance of In Forma Pauperis Appeals in § 2255 and Habeas Corpus Cases, 43 F.R.D. 343, 357 (1967).

indigent California habeas applicant was entitled to a transcript of a previous habeas hearing for use in preparing his second habeas petition, the Court did not require the petitioner to show specifically why and how he needed a full transcript. A close reading of the opinion strongly suggests that the court's holding rests not on any assumption that some particular portion of the transcript might be essential to the second habeas application, but rather on the concession that adequate preparation requires a complete review of the transcript of all prior relevant proceedings.

Finally, in Britt v. North Carolina, *supra*, the Court expressly questioned the constitutional validity of requiring an indigent to make a showing of need before the transcript of a mistrial must be provided at state expense. A majority of the Court, speaking through Mr. Justice Marshall, said:

> "We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case * * *." 404 U.S. at 228, 92 S.Ct. at 434.

The Court went on to observe that in Griffin v. Illinois, *supra*, it had been able to rely on a concession of need by the state, and, in subsequent cases, it had taken judicial notice of the importance of a transcript in a variety of circumstances. The Court then cited Long v. District Court of Iowa, *supra*, and Roberts v. LaVallee, *supra*, as examples of cases in which it had "simply found it unnecessary to discuss the question * * *." 404 U.S. at 228, n. 3, 92 S.Ct. at 434.

Thus, the clear trend of recent cases —Hardy, Gardner and Britt—has been away from the requirement that, before an indigent can obtain a free transcript of prior proceedings, he must make a showing of need tailored to the facts of a particular case. For us to rest the denial to MacCollom of a trial transcript on the ground that he failed to specify precisely why he needed it would be to revive a rule rapidly losing favor before the Supreme Court.

In rebuttal, the government contends that the three Supreme Court opinions allegedly discounting the need for a preliminary showing of need are all distinguishable from this case: *Hardy* involved a direct appeal; *Gardner*, the equivalent of an appeal from a prior denial of a petition for habeas corpus (*see* Hoover v. United States, 416 F.2d 431, 432 (6th Cir. 1969)), and *Britt*, a prior mistrial. Unlike the transcripts at issue in these cases, the government continues, a transcript of MacCollom's original trial would be of relatively little value to him at this time. Quoting from the opinion of the Court of Appeals for the Fourth Circuit in United States v. Shoaf, *supra*, the government argues:

> "In collateral proceedings * * * most of the trial errors warranting attention in direct appeals are not reviewable. Unless there has been such essential unfairness as to constitute a deprivation of a constitutionally protected right, the right to review trial errors is lost when a direct appeal is voluntarily foregone * * *.

> "The usual grounds for successful collateral attacks upon convictions arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript or a partial transcript to support some ground of collateral attack, but rarely, if ever, would the defendant, himself, need a transcript of the trial to become aware of the events or occurrences which constitute a ground for collateral attack." 341 F.2d at 835.

Assuming that the "usual" grounds for collateral relief do involve either events outside the courtroom or events inside the courtroom which some defendants might recall without the aid of a transcript—and we are aware of no empirical study to support this assumption[5]—we have no reason to know whether a particular transcript would contain a basis for collateral attack, not obvious to a layman with even a good memory. No one has seen MacCollom's trial transcript, and some statistical probability concerning the content of most trial transcripts seems a poor reason to deny MacCollom access to his own.

The Fourth Circuit rule requires an imprisoned indigent to remember constitutional deficiencies and to relate them to an attorney or directly to the court, neither of whom may have had any previous contact with the prisoner or his trial, with sufficient clarity and accuracy to establish a particularized need for part or all of his trial transcript. Meanwhile, his wealthy cellmate is permitted to purchase a trial transcript and hire an attorney to peruse it at his lei-

sure in search of ground for collateral relief. The Fourth Circuit has said that an indigent is not entitled to a transcript at government expense "merely to comb the record in the hope of discovering some flaw." United States v. Glass, 317 F.2d at 202. However, we do not read the Supreme Court's opinions nor the Constitution itself to require paupers to have better memories than the affluent. See Bentley v. United States, 431 F.2d at 253.[6]

■ The principle established by *Griffin* and its progeny does not guarantee indigents the same treatment afforded wealthy defendants; rather, it is only necessary that they be given equivalent and fundamentally fair treatment. See Kamisar & Choper, The Right to Counsel in Minnesota: Some Field Findings and Legal Policy Observations, 48 Minn.L.Rev. 1, 10 (1963).[7] In Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court held that neither the due-process clause nor the equal-protection clause requires a state to provide an indigent with counsel either on his discretionary

---

5. *See* Smith, Title 28, Section 2255 of the United States Code—Motion to Vacate, Set Aside or Correct Sentence: Effective or Ineffective Aid to a Federal Prisoner?, 40 Notre Dame Law 171, 183–85 n. 52 (1965), for a list of the grounds relied on most frequently in motions to vacate brought under section 2255. *See also* A.B.A. Project on Minimum Standards for Criminal Justice, Post-Conviction Remedies § 2.1 (Commentary), at 33 (1968 approved draft) ; Orfield, Motion to Vacate under 28 U.S.C. Section 2255; Part Two, 2 Creighton L.Rev. 213 (1969) ; 2 C. Wright, Federal Practice and Procedure § 594, at 595–606 (1969).

6. *See also* R. Sokol, Federal Habeas Corpus 219–20 (2d ed. 1969) :
   " * * * Does a prisoner have a constitutional right 'merely to comb the record in the hope of discovering some flaw'? Why doesn't he? A wealthy prisoner, James Hoffa for example, no doubt has this advantage. Why should not a poor prisoner? How great after all would be the cost of furnishing to every indigent convicted prisoner a trial transcript automatically regardless of whether requested or not? Allegations of ineffective assistance of counsel present

more difficult problems. It is inherently impossible to assure that everyone has a lawyer of equal ability, although it is feasible to attempt to assure that everyone has a lawyer whose competence is above a certain minimum level. This kind of problem is not relevant, though, to the furnishing of transcripts where it is no difficult matter to put both indigent and non-indigent on the same plateau * * *."

7. Although the equal-protection clause of the Fourteenth Amendment is not directly applicable to the federal government, the due process clause of the Fifth Amendment is broad enough to encompass Fourteenth Amendment equal protection and due process, at least in transcript cases. As the Court of Appeals for the Fourth Circuit has said,
   " * * * [U]nder the due process clause the minimal standards of justice ought not to be appreciably lower in the federal courts than the Federal Constitution requires in state courts." United States v. Shoaf, 341 F.2d at 835–836.
   *See generally* Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964) ; Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

appeal to the state supreme court or on his petition for certiorari in the United States Supreme Court. However, the Court also observed that the equal-protection clause requires that "indigents have an adequate opportunity to present their claims fairly within the adversarial system." 417 U.S. at 612, 94 S.Ct. at 2444–2445. A rule which demands that an indigent establish his need for a trial transcript, which he has never seen, before the government will produce it for his assistance in preparing a post-conviction motion under 28 U.S.C. § 2255 may completely deny the indigent the opportunity to present a valid claim which he was not fortunate enough to remember. This rule seems to us to be a short-sighted approach that elevates economy over equality.

The increased cost to the government of providing free transcripts to all imprisoned indigents for use in preparing § 2255 motions should not be overestimated. Title 28 U.S.C. § 753(b) already requires that a verbatim record be kept of all proceedings in open federal court. Those indigents who have appealed their convictions routinely obtain complete or relatively complete trial transcripts for use on appeal. Since Hardy v. United States, *supra,* decided in 1964, where a new counsel has been appointed for the appeal, he has been able to obtain a full transcript. Even where the trial lawyer is also appointed for the appeal, in some districts he is able to obtain a full transcript as a matter of form. *See* Note, The Indigent's Right to a Transcript of Record, 20 Kan.L.Rev. 766 n. 135. In this circuit, except in very rare cases, a full trial transcript is prepared for any appellant who requests one, whether or not his retained or appointed trial attorney continues to serve him for the appeal. Also, since most criminal defendants plead guilty rather than are found

guilty after trial,[8] the cost of many of the requested transcripts will be minimal. Finally, of the relatively few federal prisoners who have not already obtained a trial transcript, many or even most will have no wish to file a motion to vacate sentence and, hence, will not even seek a transcript.

Even more to the fiscal point is the cost of litigating transcript questions. In Hardy v. United States the government conceded that in one district requests for transcripts for use on appeal were not even opposed where the cost of the transcript would not exceed $200.00. The United States Attorney observed that in these cases the cost of opposing the motion would exceed the cost of preparing the transcript. 375 U.S. at 279, n. 1, 84 S.Ct. 424. *See also* Hardy v. United States, 375 U.S. at 289–292, 84 S.Ct. 424 (concurring opinion of Goldberg, J.).

The present statutory scheme requires prisoners and their attorneys to assert § 2255 claims in the hope that they will be supported by the transcript once it has been prepared. If a free transcript were prepared on demand, the transcript may well reveal no colorable grounds for collateral attack, and the court will be spared the time consumed in a transcript hearing and a frivolous 2255 motion. *See generally* Jacob & Sharma, Justice after Trial: Prisoners' Need for Legal Services in the Criminal-Correctional Process, 18 Kan.L.Rev. 493, 496–497, 509 (1970).

Thus, having surveyed many of the costs associated with the present system of requiring a court to certify that a particular portion of the record is needed to decide a specific point raised by a § 2255 motion, we are far from convinced that a rule entitling an indigent prisoner to a free transcript upon re-

---

8. The ABA Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function pt. VI, at 244 (1971 approved draft), states that "the overwhelming percentage of criminal cases in all state and federal courts, something on the order of 90 per cent, are disposed of by pleas of guilty * * *." In the district of Oregon, for example, figures prepared for the Administrative Office reveal that during calendar year 1973, of the 212 defendants found guilty, 176 (or approximately 83 per cent) pleaded guilty, and only 36 were found guilty after trial.

quest would greatly increase the overall cost to the federal judicial system. However, even if we concede that there will be a net increase in cost, there is good authority for looking beyond the dollar sign: "An affluent society ought not be miserly in support of justice, for economy is not an objective of the system * * *." Mayer v. City of Chicago, 404 U.S. at 201, 92 S.Ct. at 418 (concurring opinion of Burger, C. J.). *See also* Mayer v. City of Chicago, 404 U.S. at 196–197, 92 S.Ct. 410.

We hold then that an indigent federal prisoner,[9] permitted to proceed in forma pauperis, who has not yet obtained a transcript of his criminal trial, is entitled to such a transcript, upon request, in order to assist him in the preparation of a postconviction motion under 28 U.S.C. § 2255.

Reversed and remanded.

FRED M. TAYLOR, District Judge (dissenting):

Appellant was convicted and sentenced to imprisonment for violation of Title 18 U.S.C. § 472 (passing forged currency) on June 4, 1971, from which conviction and sentence no appeal was taken. Appellant has never filed an application for post-conviction relief under and pursuant to 28 U.S.C. § 2255, nor made any showing that he is entitled to any such relief.

On June 23, 1972, appellant, proceeding in forma pauperis, filed the present action against the United States seeking a verbatim transcript of his criminal trial, at government expense, to aid him in the preparation of a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The complaint was dismissed by the district court for failure to state a claim on which relief could be granted and this appeal followed.

The issue presented on this appeal is whether appellant, as an indigent prisoner, has a constitutional or statutory right to a free transcript in order to search for error upon which to base a Sec. 2255 petition. The majority of the panel has concluded that he has such a constitutional right, with which conclusion I respectfully disagree.

In the majority opinion it seems to be admitted that thus far all federal courts have consistently held that an indigent prisoner has no constitutional or statutory right to a free transcript for use in preparing a collateral attack on his conviction or sentence. These authorities are cited in the majority opinion. In Wilson v. Wade, 390 F.2d 632, 634 (1968), this court indicated it would adhere to the general rule of denying a transcript which would enable the petitioner to "comb the record in hope of discovering some flaw." However, the judgment in *Wade* was vacated for a different reason and the Supreme Court declined to pass on the precise question of whether the petitioner, a state prisoner, was entitled to a transcript for use in petitioning for a writ of habeas corpus. Wade v. Wilson, 396 U.S. 282, 286, 90 S.Ct. 501, 24 L.Ed.2d 470 (1969). This court in United States ex rel. Nunes v. Nelson, 467 F.2d 1380 (1972), was presented with a somewhat similar, although not identical, issue. In that case, a state prisoner sought to "inspect certain items of evidence . . . for use in preparing a future petition for a writ of habeas corpus . . ." The relief sought was denied with the observation that "[w]hat Nunes apparently wants is a license to enable him to search through a wide variety of items in order either to discover whether he has grounds for a collateral attack or to facilitate preparing a petition for collateral relief."

---

9. Our holding that the government must supply a free transcript to an indigent, convicted, federal prisoner for the purpose of preparing a 2255 motion does not necessarily mean that we also would require the government to supply a free transcript to an indigent who has been convicted but is no longer in prison. We have before us only a federal prisoner seeking a transcript, and we pass only on his claim. *See* Hardy v. United States, *supra*; Smith v. Bennett, 365 U.S. 708, 713, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961).

Although the majority opinion appears to recognize that federal court precedent is contrary to what is being held in this case, it is reasoned that the current trend is contrary to the prior decisions and that this court should follow the trend and make some new law. I am unable to agree with this theory. I submit that the authorities relied on by the majority do not compel a decision contrary to the weight of precedent.

Apparently appellant did not consider it necessary to appeal from the judgment of conviction, even though he no doubt was advised by the trial court of his right to do so and knew he could exercise such right. He has not made any claim or showing which would indicate that he may have been convicted of a crime of which he is innocent or that any of his rights were violated. He only asserts a desire to review the record to find some legal point which he can argue as a basis for release from confinement. He should not need a transcript to know whether he was convicted erroneously or whether some new circumstances have arisen to show some fatal constitutional error in the prior proceedings.

I submit that the mere fact the appellant is indigent does not entitle him to a free transcript upon request for the mere purpose of searching the record in an attempt to find possible grounds to assert a claim for post-conviction relief.

Since the action brought by appellant against the United States is for a declaratory judgment and injunctive relief, it occurs to me that there is an immunity question to be considered even though it has not been specifically raised. It does not appear that there is any statutory authority authorizing such an action and it is my understanding that absent a waiver of sovereign immunity by specific congressional consent, the federal district courts have no jurisdiction over claims against the United States.

I would affirm the Order of Dismissal.

## ORDER

The panel as constituted in the above case having voted to deny the petition for rehearing, the full court was advised of the suggestion for en banc rehearing and of the panel's vote. Circuit Judge Wallace requested a vote of all regular active judges of the court. The request for en banc consideration failed to obtain a majority of the votes.

Accordingly, the petition for rehearing is denied, and the suggestion for rehearing en banc is rejected. The mandate will issue forthwith.

WALLACE, Circuit Judge, with whom Circuit Judges EUGENE A. WRIGHT, TRASK, CHOY and SNEED concur, dissenting from Order Denying Petition for Rehearing En Banc:

Our failure to take this case en banc is unfortunate. Not only do I believe the decision wrong on the merits but it is directly contrary to prior Ninth Circuit precedent which should not be overruled other than by our court sitting en banc.

First, although justice should not be determined by the size of a pocketbook, an indigent is not entitled to any more than an average defendant who is able to pay his own way. As the Supreme Court recently stated in a case denying indigents a constitutional right to counsel on discretionary appeals:

> The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.

Ross v. Moffitt, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974). The *MacCollom* majority compares the indigent to "his wealthy cellmate." *Ante* at 1122. That is not the test. The Supreme Court rejected this view in

Ross v. Moffitt, *id.* I do not believe the average defendant would purchase a transcript in order to comb through it for possible error. The majority opinion thus places the indigent in a more favorable position than the average defendant who pays his own way.

The *MacCollom* opinion acknowledges that other circuits deciding this issue come out diametrically opposed to the majority. *Ante* at 1118 and n.3. Indeed, the majority can find no circuit case in accord with its holding. Before we create inter-circuit conflicts, here between us and the First, Fourth, Fifth and Sixth and Tenth Circuits, we should be persuaded the rest are wrong. I, for one, am not.

Second, the *MacCollom* decision is directly contrary to prior Ninth Circuit cases. Wilson v. Wade, 390 F.2d 632 (9th Cir. 1968), vacated, 396 U.S. 282, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970), explicitly held that a state prisoner is not entitled to a free transcript "to comb the record in the hope of discovering some flaw." *Id.* at 634. Although *Wade* concerned habeas corpus rather than section 2255, it decided the same constitutional issue as *MacCollom*. *See id.* at 633–34; MacCollom v. United States, *Ante* at 1119. The majority declines to follow *Wade* because the Supreme Court vacated judgment and remanded to the district court. The vacation, however, did not concern the merits of our holding. *See* Wade v. Wilson, 396 U.S. 282, 286–87, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970). It is interesting to note that *Wade* has been used as authority by our court in spite of the vacation by the Supreme Court. *See* MaGee v. Nelson, 455 F.2d 275, 276 (9th Cir.), cert. denied, 405 U.S. 1070, 92 S.Ct. 1517, 31 L.Ed.2d 802 (1972).

In Taylor v. United States, 238 F.2d 409 (9th Cir. 1956), cert. denied, 353 U.S. 938, 77 S.Ct. 817, 1 L.Ed.2d 761 (1957), we denied a trial transcript in a section 2255 case. The majority contends that *Taylor* need not be followed

because it was decided "only months" (actually seven months) after Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956). *Ante* at 1119. This is not persuasive. I assume the *Taylor* panel was aware of *Griffin* but even if it were not, the denial of certiorari in *Taylor* may be some indication that the Supreme Court did not believe that *Griffin* required a different result. Although *Taylor* did not discuss the constitutional issue raised in *MacCollom*, I think an en banc hearing is necessary to overrule it.

The majority's opinion also does not present adequate grounds for disapproving McGarry v. Fogliani, 370 F.2d 42, 44 (9th Cir. 1966). *McGarry* held that a state prisoner does not have a right to a trial transcript when he petitions for habeas corpus in federal court. *Id.* at 44. The *MacCollom* majority construes this holding to be dictum, *Ante* at 1119, relying on the following language in *Wade, supra,* 390 F.2d at 634 n.1:

Such authority as is available is in accord with what was stated in McGarry, see footnote 7 [of *McGarry*], where the court cites United States v. Glass, 4th Cir., 317 F.2d 200, 202. Although the language there is in accord with the McGarry decision, under the circumstances of *that* case it may be dictum. (Emphasis added.)

This argument fails for several reasons. First *MacCollom's* use of the passage quoted above is just erroneous. The footnote refers to a dictum in United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963), not in *McGarry*. A reading of *Glass* bears this out. *Id.* at 202–03. Furthermore, *Wade* relied upon *McGarry* as requiring the result held. The footnote quoted above is appended to the following sentence in the text of the *Wade* opinion:

So far as the district court's findings are concerned, our holding in McGarry v. Fogliani, supra, would require us to say that Wade was not en-

titled to demand a transcript merely to enable him to comb the record in the hope of discovering some flaw.

390 F.2d at 634.[1] Moreover, even if the majority were correctly interpreting the footnote in *Wade*, it would not be persuasive. Regardless of how *Wade* interprets *McGarry*, a reading of *McGarry* reveals it to hold that state habeas petitioners are not entitled to a transcript as of right. *McGarry, supra*, 370 F.2d at 44.

The final argument advanced by the *MacCollom* majority for abandoning the prior Ninth Circuit decisions *contra* is that they have been undercut by subsequent Supreme Court decisions. I disagree. As late as its decision in *Wade* in 1970, the Supreme Court was willing to avoid the issue of the right to a transcript on collateral review, describing it as "a question of first impression." 396 U.S. at 286, 90 S.Ct. 501. The only subsequent decisions cited in *MacCollom* are at best inconclusive on this issue. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), held that a state criminal defendant need not receive a transcript of his mistrial before he is tried again if a substantially equivalent alternative is available. In dicta, the Court both questioned the constitutionality of requiring a particularized showing of need for transcripts and admitted that the "outer limits" of the right to a transcript remain unclear. 404 U.S. at 227–28, 92 S.Ct. 431. The other decision cited in *MacCollom* is Ross v. Moffitt, *supra*, 417 U.S. 600, 94 S.Ct. 2437, which denied a constitutional right to counsel on discretionary appeals to a state's highest court. As argued above, this case undermines rather than strengthens the reasoning of the *MacCollom* majority. These cases, therefore, do not require abandonment of our prior holdings.

[1]. I cannot understand how the *MacCollom* majority can on one hand dismiss the holding of *Wade* on the ground that the Supreme Court vacated the judgment and, on the other hand, salvage a footnote from that opinion in order to show that the language in *McGarry* was dictum.