# UNITED STATES *v.* MacCOLLOM

No. 74-1487.  Argued  March  29,  1976—Decided  June  10,  1976

318

REHNQUIST, J., announced the judgment of the Court and delivered an opinion, in which BURGER, C. J., and STEWART and POWELL, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 329. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 330. STEVENS, J., filed a dissenting opinion, in which BRENNAN, WHITE, and MARSHALL, JJ., joined, *post*, p. 334.

*Frank H. Easterbrook* argued the cause for the United States *pro hac vice.* With him on the briefs were *Solicitor General Bork; Assistant Attorney General Thornburgh,* and *Jerome M. Feit.*

*John A. Strait,* by appointment of the Court, 423 U. S. 1045, argued the cause and filed a brief for respondent.

MR. JUSTICE REHNQUIST announced the judgment of the Court in an opinion in which THE CHIEF JUSTICE, MR. JUSTICE STEWART, and MR. JUSTICE POWELL join.

This case presents the question of whether the restrictions imposed by 28 U. S. C. § 753 on the availability to an indigent prisoner of a free trial transcript to aid him in preparing a petition for collateral relief are consistent with the Fifth Amendment to the Constitution. The Court of Appeals for the Ninth Circuit, in contrast to every other Court of Appeals which has ruled on the issue, held that such prisoners have an absolute right to a transcript. We reverse.

I

Respondent was convicted of uttering forged currency in violation of 18 U. S. C. § 472 after a jury trial in the United States District Court for the Western District of Washington. On June 3, 1970, he was sentenced to 10 years' imprisonment. He did not appeal. Nearly two years later respondent, acting *pro se,* filed in the District Court a paper designated "Motion for Transcript in Forma Pauperis." This was returned to respondent with the advice that he first had to file a motion pursuant to 28 U. S. C. § 2255 before the court could act on his request for a transcript.

Respondent then filed a "complaint for Declaratory Judgment and Injunctive Relief" in which he alleged that he "intends to move this Court for vacation of his sentence pursuant to 28 U. S. C. § 2255." He asserted that he was unable to afford a transcript, that a transcript would show that he had not been afforded effective assistance of counsel, and that there was insufficient evidence to support the verdict of guilty. The complaint further alleged that without a transcript respondent would be "unable to frame his arguments for fair and

effective review." The complaint did not elaborate upon respondent's two asserted grounds for relief.

The District Court treated this pleading as a motion under 28 U. S. C. § 2255, granted respondent leave to proceed *in forma pauperis*, appointed counsel, and held a hearing. After the hearing the court dismissed the complaint for failure to state a claim upon which relief could be granted. Respondent appealed, and a divided panel of the Court of Appeals reversed, 511 F. 2d 1116 (1974), holding that respondent was entitled to a transcript "in order to assist him in the preparation of a post-conviction motion under 28 U. S. C. [§] 2255." *Id.*, at 1124.

## II

Congress has expressly addressed the question of furnishing transcripts at public expense in 28 U. S. C. § 753 (f), which provides in pertinent part:

"Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U. S. C. [§] 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal. . . ."

The statute thus provides for a free transcript for indigent prisoners asserting a claim under § 2255 if a judge certifies that the asserted claim is "not frivolous"

and that the transcript is "needed to decide the issue." The District Court, by its conclusion that respondent failed to state a claim upon which relief could be granted, implicitly decided one of these two issues against respondent.

The Court of Appeals held that it was not necessary to declare § 753 (f) unconstitutional in order to grant respondent relief. Rather, the court held that the section "does not prohibit courts from . . . requiring the government to supply an imprisoned indigent with a free transcript *before* he files a § 2255 motion. Such a court order would simply fill a constitutional deficit not addressed by the statute." (Emphasis added.) 511 F. 2d, at 1119–1120.

This is a novel approach to statutory construction. The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress. *Reeside* v. *Walker,* 11 How. 272, 291 (1851). This particular statute contains a limited grant of authority to the courts to authorize the expenditure of public funds for furnishing transcripts to plaintiffs in § 2255 actions. The fact that the statute does not "prohibit" the furnishing of free transcripts in other circumstances is of little significance, since most such statutes speak only in terms of granting authority for the expenditure of federal funds. Where Congress has addressed the subject as it has here, and authorized expenditures where a condition is met, the clear implication is that where the condition is not met, the expenditure is not authorized. *Botany Mills* v. *United States,* 278 U. S. 282, 289 (1929); *Passenger Corp.* v. *Passengers Assn.,* 414 U. S. 453, 458 (1974).[1]

---

[1] Our Brother STEVENS would construe the pertinent part of § 753 (f) to "make transcripts available almost automatically in

It is true, as respondent observes, that the statute, as currently written, distinguishes between habeas corpus petitioners and parties proceeding under § 2255 in that only the latter must make a showing of need and nonfrivolousness in order to obtain a free transcript. Thus while it is still true that the "remedy" afforded by § 2255 is "exactly commensurate with that which had previously been available by habeas corpus . . . ," *Hill* v. *United States,* 368 U. S. 424, 427 (1962), the right to pursue that remedy with a free transcript has now been somewhat limited by Congress.[2] Respondent argues that this constitutes a suspension of the writ of habeas corpus in violation of Art. I, § 9, cl. 2, of the Constitution.

This argument presupposes, *inter alia,* that a right to a free transcript is a necessary concomitant of the writ which the Founders declared could not be suspended. This is obviously not the case. The writ of habeas corpus operated until 1944 with no provision for free tran-

---

§ 2255 proceedings . . . ," *post,* at 338. We think such a construction would do violence to the intent of Congress which clearly appears from the language of that section, *supra,* at 320. Congress *did* in that section make transcripts available automatically on *direct appeal,* but in the same section limited their availability in § 2255 motions to cases where the trial judge certifies that the § 2255 suit is not frivolous and that the transcript is needed to decide the issue presented by the suit. Our Brother STEVENS advances what may well be very sound policy reasons for furnishing free transcripts as a matter of course to § 2255 plaintiffs, as well as to convicted defendants pursuing direct appeals. But it is plain from a reading of § 753 (f) that these considerations have not yet commended themselves to Congress.

[2] The difference is not as great as it might appear to be, however, because habeas corpus petitioners who wish to proceed *in forma pauperis* must still overcome a "nonfrivolous" barrier under 28 U. S. C. § 1915. *E. g., Kitchens* v. *Alderman,* 376 F. 2d 262 (CA5 1967); *Blair* v. *California,* 340 F. 2d 741 (CA9 1965).

scripts for indigents. See 58 Stat. 6, 28 U. S. C. § 9a (1940 ed., Supp. IV). Congress, when in that year it authorized free transcripts for the first time, could certainly have limited the authorization to nonfrivolous cases where a need had been shown. If Congress could have thus limited the writ directly without "suspending" it, it follows that it may do so indirectly. The only possible objection is a Fifth Amendment due process-equal protection claim, to which we now turn.

## III

The Court of Appeals did not technically decide this constitutional issue, since it thought it had discovered a lacuna in the statute, but its reference to a "constitutional deficit" suggests its view on this question. Respondent urges that if the statute is read as we now read it, it violates both the Due Process Clause of the Fifth Amendment and his right to "equal protection."

The Due Process Clause of the Fifth Amendment does not establish any right to an appeal, see *Griffin* v. *Illinois*, 351 U. S. 12, 18 (1956) (plurality opinion), and certainly does not establish any right to collaterally attack a final judgment of conviction.[3] In this case respondent was granted a statutory right of appeal without payment of costs if he were an indigent, and had he pursued that right § 753 (f) would have authorized the use of public funds to furnish him a transcript of the trial proceedings without any further showing on his part. Having forgone this right, which existed by force of statute only, he may not several years later successfully assert a due process right to review of his conviction and thereby obtain a free transcript on his own terms as an ancillary consti-

---

[3] The constitutional treatment of habeas corpus, of course, is not contained in the Due Process Clause, but in Art. I, § 9, cl. 2, of the Constitution.

tutional benefit. The conditions which Congress had imposed on obtaining such a transcript in § 753 (f) are not "so arbitrary and unreasonable . . . as to require their invalidation," *Douglas* v. *California,* 372 U. S. 353, 365 (1963) (Harlan, J., dissenting); rather they "comport with fair procedure," *id.,* at 357 (Court's opinion).

Although the statutory conditions established in § 753 (f) with respect to furnishing a free transcript to movants in § 2255 proceedings are therefore consistent with the due process requirements of the Fifth Amendment, it is undoubtedly true that they place an indigent in a somewhat less advantageous position than a person of means. But neither the Equal Protection Clause of the Fourteenth Amendment, nor the counterpart equal protection requirement embodied in the Fifth Amendment, guarantees "absolute equality or precisely equal advantages," *San Antonio School Dist.* v. *Rodriguez,* 411 U. S. 1, 24 (1973). In the context of a criminal proceeding they require only "an adequate opportunity to present [one's] claims fairly . . . ." *Ross* v. *Moffitt,* 417 U. S. 600, 616 (1974).

In *Douglas* v. *California, supra,* the Court held that the State must provide counsel for an indigent on his first appeal as of right. But in *Ross* v. *Moffitt, supra,* we declined to extend that holding to a discretionary second appeal from an intermediate appellate court to the Supreme Court of North Carolina. We think the distinction between these two holdings of the Court is of considerable assistance in resolving respondent's equal protection claim. Respondent in this case had an opportunity for direct appeal, and had he chosen to pursue it he would have been furnished a free transcript of the trial proceedings. But having forgone that right, and instead some years later having sought to obtain a free transcript in order to make the best case he could in a

proceeding under § 2255, respondent stands in a different position.

The Court has held that when a State grants a right to collateral review, it may not deny the right to an indigent simply because of inability to pay the required filing fee, *Smith* v. *Bennett,* 365 U. S. 708 (1961). There is no such impediment here; respondent was permitted to proceed *in forma pauperis* in his § 2255 action. The Court has also held that a State may not confide to the public defender the final decision as to whether a transcript shall be available to the criminal defendant who collaterally attacks his conviction, *Lane* v. *Brown,* 372 U. S. 477 (1963). There the Court observed that the state provision "confers upon a state officer outside the judicial system power to take from an indigent all hope of any appeal at all." *Id.,* at 485.

The congressional statute governing the furnishing of free transcripts to plaintiffs in § 2255 actions has no such infirmity. The decision as to the provisions of the transcript at public expense is made initially by an official at the very heart of the judicial system—a district judge in the judicial district in which the § 2255 plaintiff was tried. The district court has the power to order a free transcript furnished if it finds that the "suit . . . is not frivolous and that the transcript is needed to decide the issue presented . . . ." 28 U. S. C. § 753 (f).

We think that the formula devised by Congress satisfies the equal protection component of the Fifth Amendment. Respondent chose to forgo his opportunity for direct appeal with its attendant unconditional free transcript. This choice affects his later equal protection claim as well as his due process claim. Equal protection does not require the Government to furnish to the indigent a delayed duplicate of a right of appeal with attendant free transcript which it offered in the first

instance, even though a criminal defendant of means might well decide to purchase such a transcript in pursuit of relief under § 2255. The basic question is one of adequacy of respondent's access to procedures for review of his conviction, *Ross* v. *Moffitt, supra,* and it must be decided in the light of avenues which respondent chose not to follow as well as those he now seeks to widen. We think it enough at the collateral-relief stage that Congress has provided that the transcript be paid for by public funds if one demonstrates to a district judge that his § 2255 claim is not frivolous, and that the transcript is needed to decide the issue presented.

Respondent urged in oral argument that if trial counsel had done a poor job of representing a criminal defendant, such counsel might well urge the defendant to forgo his right of appeal in order to prevent a claim of ineffective assistance of counsel from being raised on the appeal. It is certainly conceivable that such a state of facts might exist, notwithstanding the fidelity to the interest of their clients demonstrated repeatedly by the overwhelming majority of the members of the legal profession. But § 753 (f) does not require that a § 2255 plaintiff must *prove* his claim in order to obtain a transcript, but only that he convince the district court that such claim is not frivolous. Had the District Court here been confronted not with merely a conclusory allegation, but with some factual allegations indicating a denial of respondent's Sixth Amendment right to counsel, together with an additional explicit assertion that trial counsel had urged respondent to forgo his appeal, that court might have concluded that such a claim was not frivolous, and further decided that a free transcript should be furnished pursuant to § 753 (f).[4]

---

[4] Since a § 2255 claim is usually presented to the trial judge he will likely have an independent recollection of counsel's performance

But that is not our case. Respondent made only a naked allegation of ineffective assistance of counsel. Since any discussion he may have had with his trial counsel as to the desirability of appeal would not normally appear in the transcript of proceedings at trial, the furnishing of such transcript would not have aided him in refreshing his recollection of such discussions. The failure to flesh out this aspect of respondent's claim of ineffective assistance of counsel, then, is not likely to have been cured by a transcript.

We think this is an area of the law where the opinions of the courts of appeals are entitled to particular weight, since they represent not only expositions of federal and constitutional law, but also expressions of essentially practical judgment on questions which those courts must confront far more than we do. The fact that with the exception of the decision presently under review they have unanimously concluded that the conditions established by § 753 (f) for the furnishing of a free transcript do not violate the Fifth Amendment is significant.[5] A practical reason for their conclusion is well expressed by Judge Haynsworth in *United States* v. *Shoaf,* 341 F. 2d 832 (CA4 1964), in which he said for that court:

> "The usual grounds for successful collateral attacks upon convictions arise out of occurrences out-

---

which may well lead him to conclude that a movant's claim is nonfrivolous.

[5] *E. g., Ellis* v. *Maine,* 448 F. 2d 1325 (CA1 1971); *United States ex rel. Buford* v. *Henderson,* 524 F. 2d 147 (CA2 1975); *United States* v. *Shoaf,* 341 F. 2d 832 (CA4 1964); *United States* v. *Herrera,* 474 F. 2d 1049 (CA5 1973); *Hoover* v. *United States,* 416 F. 2d 431 (CA6 1969); *United States ex rel. Nunes* v. *Nelson,* 467 F. 2d 1380 (CA9 1972) (habeas corpus); *Taylor* v. *United States,* 238 F. 2d 409 (CA9 1956) (§ 2255 motion); *Hines* v. *Baker,* 422 F. 2d 1002 (CA10 1970).

side of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript. He may well have a need of a transcript [to support his claim] but rarely, if ever, . . . to become aware of the events or occurrences which constitute a ground for collateral attack," *Id.*, at 835.[6]

We conclude that the fact that a transcript was available had respondent chosen to appeal from his conviction, and remained available on the conditions set forth in § 753 to an indigent proceeding under § 2255, afforded respondent an adequate opportunity to attack his conviction. To hold otherwise would be to place the indigent defendant in a more favorable position than a similarly situated prisoner of some, but not unlimited, means, who presumably would make an evaluation much like that prescribed in § 753 (f) before he spent his own funds for a transcript.

"[T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Ross* v. *Moffitt,* 417 U. S., at 616.

---

[6] This opinion and other aspects of this question were thoroughly discussed shortly after the 1965 amendment to § 753 (f) in Blackmun, Allowance of In Forma Pauperis Appeals in § 2255 and Habeas Corpus Cases, 43 F. R. D. 343 (1967).

The judgment of the Court of Appeals for the Ninth Circuit is

*Reversed.*

MR. JUSTICE BLACKMUN, concurring in the judgment.

I am in complete accord with what is said in n. 1 of the plurality opinion, *ante,* at 321–322, regarding MR. JUSTICE STEVENS' dissent. It is not this Court's function to rewrite 28 U. S. C. § 753 (f) in order to reflect—as that dissent appears to me to urge—what may be regarded as sound policy for the administration of our criminal justice system.

I write separately, however, to emphasize the narrowness of the constitutional issue that is before us and the ease of its resolution. The answer to this case lies, I think, in the fact that respondent MacCollom has a *current* opportunity to present his claims fairly, and we need not consider the constitutional significance of what he might have done at the time a direct appeal from his conviction could have been taken.

For me, the issue in this case is whether the Constitution requires that a transcript be provided when an indigent makes no showing, with any degree of particularity, that he requires the transcript in order to make an effective collateral attack on his conviction. The crucial inquiry, as the Court said in the analogous Fourteenth Amendment context, is whether § 753 (f) affords indigents "an adequate opportunity to present their claims fairly within the adversary system." *Ross* v. *Moffitt,* 417 U. S. 600, 612 (1974).

Here, respondent was permitted to proceed *in forma pauperis,* and counsel was appointed for him. In order for him to obtain a transcript of his trial, he was required to show only that his claim was not frivolous and that there was a basis, grounded on *some* articulable facts,

for believing that a transcript would assist him in his § 2255 proceeding. Clearly, there is no constitutional requirement that the United States provide an indigent with a transcript when that transcript is not necessary in order for him to prove his claim, or when his claim is frivolous on its face. Nor does the Constitution require that an indigent be furnished every possible legal tool, no matter how speculative its value, and no matter how devoid of assistance it may be, merely because a person of unlimited means might choose to waste his resources in a quest of that kind.

The way was thus open for respondent to present his claim fairly within the very bounds of § 753 (f). One need go no further. I therefore join the judgment reversing the Court of Appeals.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

I join my Brother STEVENS' dissent but add this separate dissent to record my disagreement with the plurality's view that the Government's refusal to furnish an indigent defendant a free trial transcript in a proceeding under 28 U. S. C. § 2255, upon merely a showing of indigency, does not deny respondent equal protection of the laws secured against the Federal Government, as the plurality concedes, through the Due Process Clause of the Fifth Amendment. See *Buckley* v. *Valeo*, 424 U. S. 1, 87 (1976); *Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 638 n. 2 (1975).

"[T]he central aim of our entire judicial system [is that] all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court,' " *Griffin* v. *Illinois*, 351 U. S. 12, 17 (1956) (plurality opinion), for this is a "country dedicated to affording equal justice to all and

special privileges to none in the administration of its criminal law." *Id.,* at 19. "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." *Roberts* v. *LaVallee,* 389 U. S. 40, 42 (1967). Thus, in *Griffin,* the Court held that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts," 351 U. S., at 19, and that therefore the State must furnish the indigent defendant with a free trial transcript for purposes of direct appeal.

The *Griffin* principle of equality was not limited to transcripts for purposes of direct appellate review. In *Smith* v. *Bennett,* 365 U. S. 708 (1961), the Court invalidated a filing fee for state habeas corpus as applied to indigents. The invalidation was held to be required by an earlier decision holding that a State could not require an indigent to pay a filing fee before being allowed to appeal in one of its courts. *Burns* v. *Ohio,* 360 U. S. 252 (1959). Later, *Lane* v. *Brown,* 372 U. S. 477, 484 (1963), held that "*Smith* makes clear that the *Griffin* principle also applies to state collateral proceedings . . . ."

The *Griffin* equality principle was next applied to appeals from state habeas proceedings. In *Long* v. *District Court of Iowa,* 385 U. S. 192 (1966), the Court, stating that "having established a post-conviction procedure, a State cannot condition its availability to an indigent upon any financial consideration," held that an indigent defendant must be furnished a free transcript of his state habeas proceedings for purposes of appeal from a denial of that relief. *Id.,* at 194. And in *Gardner* v. *California,* 393 U. S. 367 (1969), the Court went still further and required the furnishing of a transcript of a habeas proceeding for the purposes of a second such

proceeding. Thus, the plurality's opinion today that respondent may be required to show more than indigency before being entitled to his trial transcript for purposes of collateral review is a plain departure from *Griffin* and its progeny.

The denial in this case is particularly egregious, for one of respondent's claims on the merits is that he was denied effective assistance of counsel. Substantiation of such a claim is virtually impossible without the aid of a trial transcript. Yet the plurality denigrates respondent's claim as a "naked allegation." *Ante,* at 327. Essentially, therefore, he is denied a transcript for making an unsubstantiated allegation, an allegation that obviously he cannot establish without a transcript.[1]

It bears emphasis that where, as here, denial of equal protection is the issue, it matters not, under our cases, that the indigent had a fair opportunity to present a defense and have his conviction reviewed on direct appeal. The unfairness born of discrimination denying equal protection is as offensive to the Constitution as any unfairness resulting from procedural deficiencies in the criminal system. Thus, I cannot accept the plurality's argument that respondent could constitutionally be de-

---

[1] Respondent's other allegation is insufficiency of the evidence. Two of our decisions plainly indicate that this allegation suffices to require provision of a verbatim transcript. See *Mayer* v. *City of Chicago,* 404 U. S. 189 (1971); *Draper* v. *Washington,* 372 U. S. 487 (1963). *Mayer* also indicated that an allegation of prejudicial prosecutorial misconduct, 404 U. S., at 198, also requires provision of a transcript. That claim, for purposes of substantiation on appeal or collateral review, is like respondent's first claim of ineffective assistance of counsel. *Mayer,* 404 U. S., at 195, held that where the grounds of appeal are insufficiency of the evidence and prosecutorial misconduct, the defendant need only "make out a colorable need for a complete transcript" in order to be entitled to it.

nied a free transcript because "[r]espondent in this case had an opportunity for direct appeal, and had he chosen to pursue it he would have been furnished a free transcript of the trial proceedings." *Ante,* at 324. The Constitution demands that respondent, despite his indigency, be afforded the same opportunity for collateral review of his conviction as the nonindigent.[2] "If [the Government] has a general policy of allowing [collateral relief], it cannot make lack of means an effective bar to the exercise of this opportunity. The [Government] cannot keep the word of promise to the ear of those illegally convicted and break it to their hope." *Griffin* v. *Illinois,* 351 U. S., at 24 (Frankfurter, J., concurring in judgment).

The plurality's reliance, *ante,* at 324, upon *Ross* v. *Moffitt,* 417 U. S. 600, 616 (1974), for the proposition that "[i]n the context of a criminal proceeding [equal protection] require[s] only 'an adequate opportunity to present [one's] claims fairly' " is patently misplaced. This quotation from *Ross,* read in context, speaks not merely to equality of opportunity in the overall criminal process, but also to equality of opportunity at any stage of the process where the validity of the defendant's restraint or conviction is the primary consideration.

---

[2] Indeed, in *Burns* v. *Ohio,* 360 U. S. 252 (1959), a filing fee for direct appeals was held invalid as applied to indigents, even though the indigent petitioner there had already received one appellate review of his conviction. As the Court stated:

"[T]he State argues that petitioner received one appellate review of his conviction in Ohio, while in *Griffin,* Illinois had left the defendant without any judicial review of his conviction. This is a distinction without a difference for, as *Griffin* holds, once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty." *Id.,* at 257.

I reject as wholly fallacious the argument that adequacy of opportunity to present claims at trial and on direct appeal so far diminishes the importance of collateral review, that discrimination between indigent and nonindigent in post-conviction proceedings is constitutionally tolerable. That argument is implicitly if not explicitly rejected in the unbroken line of our decisions that make no distinction, for purposes of equal protection analysis, between collateral proceedings and trials and direct appeals. Any distinction must necessarily be constitutionally intolerable where the stakes are no less than the constitutionality of a criminal conviction. Any distinction would also be plainly inconsistent with the explicit recognition given habeas corpus in Art. I, § 9, cl. 2, of the Constitution. See *Fay* v. *Noia,* 372 U. S. 391, 399–403 (1963). And for federal prisoners, "history makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis* v. *United States,* 417 U. S. 333, 343 (1974).

Today's decision empties of all promise the Court's assurance only six years ago that decisions applying *Griffin* "have pointedly demonstrated that the passage of time has heightened rather than weakened the attempts [by this Court] to mitigate the disparate treatment of indigents in the criminal process." *Williams* v. *Illinois,* 399 U. S. 235, 241 (1970). 1 dissent.

MR. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN, MR. JUSTICE WHITE, and MR. JUSTICE MARSHALL join, dissenting.

The decisive question in this case is whether, in judging the sufficiency of respondent's motion, we should assume that his allegations are true.

He has alleged that there was insufficient evidence to

support his conviction, but that he did not appeal. If he had appealed, respondent would have obtained the transcript of the trial at Government expense.[1] He has also alleged that his lawyer did not provide him with the effective representation at trial that the Sixth Amendment requires, and that this conclusion would be supported by an examination of the trial transcript. Respondent has neither the training nor the memory to allege the factual basis for that conclusion. If, however, that conclusion is accurate, he is entitled not only to a transcript but to a new trial.

As the plurality points out, there are legitimate reasons for holding that respondent's allegations are not specific enough. In most cases the pleader should be able to set forth more factual details to support his ultimate conclusion. If respondent's pleading is adequate, almost any general statement claiming ineffective assistance of counsel would entitle a prisoner to a transcript in a proceeding under § 2255. In short, the right to a transcript at that stage would be almost as automatic as when a direct appeal is taken. Thus, in a sense, this case presents the question whether the defendant's right to a transcript at Government expense should survive if he fails to take a direct appeal.

There are two reasons why I would answer that question in the affirmative and accept respondent's allegations at face value for purposes of determining whether his motion is frivolous and whether a transcript is necessary to decide the claims he asserts.

First, § 753 (f) should be interpreted to establish a standard of nonfrivolousness and need that may be fairly administered. The statute itself does not address the standard that judges are to use in determining "that the suit or appeal is not frivolous and that the transcript is

---

[1] 28 U. S. C. § 753 (f); 18 U. S. C. §§ 3006A (a), (c), (d) (6).

needed to decide the issue presented by the suit or appeal," and the legislative history is also silent on the question.[2] The plurality reads the statute to impose upon the § 2255 movant the burden of putting forward "some factual allegations" indicating a denial of constitutional rights, *ante,* at 326, but this reading creates the risk that district judges will exercise the discretion conferred by the statute on a haphazard rather than a principled basis. In many cases, the judge can have no rational basis for determining whether or not the movant could ultimately succeed on the merits without first

---

[2] The provision for free transcripts in § 2255 cases was added in 1965 by Pub. L. 89–167, 79 Stat. 647, which followed verbatim a proposal of the Judicial Conference in 1961. Report of the Judicial Conference of the United States, Proceedings 100–101 (1961). The primary purpose of the amendment was to make transcripts as available to indigent federal prisoners on § 2255 motions as on habeas corpus. See H. R. Rep. No. 133, 89th Cong., 1st Sess. (1965); S. Rep. No. 617, 89th Cong., 1st Sess. (1965); 111 Cong. Rec. 5000 (1965) (remarks of Rep. Celler); *id.,* at 20828–20829. The legislative sources do not discuss what standards should be applied in determining nonfrivolousness and need.

Specifically, the legislative history does not address the question whether federal prisoners are required to make a stronger showing of nonfrivolousness and need on § 2255 motions than on habeas corpus. Although § 753 (f) expressly requires certification of nonfrivolousness and need only in § 2255 cases, it requires prior leave to proceed *in forma pauperis* in both habeas corpus and § 2255 proceedings. This requirement, in turn, imports the requirement of nonfrivolousness contained in 28 U. S. C. § 1915 (d). The legislative history contains no indication that the standard of nonfrivolousness for § 2255 cases was to be any stronger than that imposed by § 1915 (d). See Blackmun, Allowance of In Forma Pauperis Appeals in § 2255 and Habeas Corpus Cases, 43 F. R. D. 343, 356–357 (1967). Indeed, § 1915 is nowhere mentioned. Nor does the requirement of need impose any additional burden upon § 2255 movants, since §§ 753 (f) and 1915 (d) could not reasonably be interpreted to grant a right to a transcript to habeas corpus petitioners who assert nonfrivolous claims that can be resolved without a transcript.

ordering a transcript.[3] Unquestionably some judges routinely order a transcript in a case like this while others do not. Given the uncertainty of the standard adopted by the plurality,[4] the indigent's right to protection against the risk that his appointed counsel was in fact ineffective depends on the happenstance of what district judge has been assigned to his case. Such an important protection should not depend on such a fortuitous circumstance. In short, the administration of justice in the federal courts would be more evenhanded if the indigent's right to a transcript were not dependent either upon the advice he receives from counsel at the time when he may still file a direct appeal,[5] or upon his

---

[3] Since our most gifted trial lawyers usually need daily copy to be sure of exactly what happened in the courtroom the preceding day, and since the passage of time is bound to cause any trial to be blended with many others in the judge's memory, it is almost inconceivable that the judge can determine whether a motion has arguable merit without the benefit of a transcript.

[4] Would the plurality regard respondent's pleadings as sufficient if he had alleged that his lawyer failed to object to inadmissible evidence, failed to argue effectively to the jury, failed to advise him properly about his appeal rights, or failed to conduct an adequate cross-examination of key prosecution witnesses? Such allegations are just as easily made as the general claim of ineffectiveness of counsel and just as difficult to support by factual details without the assistance of a transcript. Rather than requiring the district judge to take the time to evaluate all the permutations of such allegations as these, is it not more sensible to make the record available promptly and automatically?

[5] Indeed, the failure of respondent's attorney to file a notice of appeal itself supports his claim of denial of effective assistance of counsel. Because notice of appeal from a criminal conviction must be filed within the 10-day period specified in Fed. Rule App. Proc. 4 (b), most defense counsel routinely file such notice in order to protect their clients' right to appeal and to obtain a transcript. Furthermore, in the present case, respondent represented in this Court, although not in the District Court, that he did not appeal from his conviction because he was advised by his lawyer that " 'it would

later ability to persuade a trial judge that if the transcript were available, it would show that counsel's advice was actually unsound. The indigent is at least entitled to a transcript of sufficient completeness to permit a determination of frivolousness. Cf. *Coppedge* v. *United States,* 369 U. S. 438, 445–446.[6]

Second, in my judgment a ruling in respondent's favor would tend to improve the administration of justice in the federal system. If, as seems probable, such a ruling would make transcripts available almost automatically in § 2255 proceedings, it would make good sense for federal prosecutors to adopt the practice of routinely ordering the transcript at the conclusion of every criminal trial resulting in conviction. Such a practice would eliminate a serious cause of delay in the processing of criminal appeals.[7] Even assuming

interfere with a motion to modify sentence.'" Brief for Respondent 3.

[6] Although I have described that right as "almost" the equivalent of the absolute right to a full transcript on direct appeal, the difference between the two is significant. Before Congress amended § 753 (f) to provide for automatic availability of transcripts, Pub. L. 91–545, 84 Stat. 1412, the statute already authorized transcripts for appellants proceeding *in forma pauperis,* 28 U. S. C. § 753 (f) (1964 ed., Supp. V), but, under *Coppedge,* 369 U. S., at 446, it only entitled the appellant to a transcript sufficient to determine nonfrivolousness. The fact that Congress amended the statute to give the appellant the right to a complete transcript demonstrates (a) that Congress was aware of this difference, and (b) that recognition of a right in a § 2255 context which is only "almost" as valuable as the right on direct appeal is consistent with the intent of Congress.

[7] As Judge Craven noted in *Jones* v. *Superintendent, Virginia State Farm,* 460 F. 2d 150, 153 n. 4 (CA4 1972), rehearing denied, 465 F. 2d 1091, cert. denied, 410 U. S. 944 (1973): "It has been noted time and again that the delay in deciding appeals is often attributable to delay in getting a transcript." Since the allowance of bail pending appeal is almost routine in the federal system (a routine, incidentally, which might well be restudied), defendants may postpone their incarceration by delaying their appeals as long

an increase in monetary costs,[8] we should take into account the costs associated with unnecessary delay in the appellate process and the saving in judges' time that would result from the elimination of the need to decide questions such as this. One of our Nation's scarcest resources is the time of our judges; if spending a few dollars [9] for automatic disposition of preliminary issues will enable them to devote extra time to adjudicating disputes on the merits, the money will be well spent. See *Coppedge, supra,* at 450–452; *id.,* at 458 (STEWART, J., concurring); J. Frank, American Law: The Case for

as possible, and, thus, they have a practical motivation for not ordering transcripts any sooner than necessary.

[8] Appeals are now filed in approximately 75% of criminal cases in which a defendant is convicted after trial. The rate has increased steadily from approximately 46% in Fiscal Year 1966 to approximately 75% in Fiscal Year 1973, where it has remained. See Annual Reports of the Director of the Administrative Office of the United States Courts, Tables B1, D4 (1966–1969, 1971–1975) (compare total criminal appeals commenced with total convictions after trial). Since appeals are taken from such a high percentage of convictions after trial, since experience teaches us that the appeal rate is more apt to increase than decrease, and since an appreciable number of transcripts are no doubt prepared in § 2255 proceedings already, a rule requiring the automatic preparation of a transcript would have a minimal impact on the budget. Even if the total number of transcripts would increase significantly, it is doubtful that there would be a parallel increase in cost because there would surely be a substantial saving in substituting a routine practice for the present practice of ordering transcripts individually, often at a time when the court reporter is faced with an appellate deadline.

[9] I use the words "few dollars" advisedly because the entire cost of subsidizing the defense of indigents, including the fees and expenses of appointed counsel, has amounted to between 5% and 9% of the expenditures for the lower federal courts in recent years, which in turn have been less than $\frac{1}{10}$ of 1% of the national budget. Annual Reports of the Director of the Administrative Office of the United States Courts VI–3 (1975), IV–2 (1974), III–3 (1973), III–3 (1972); Budget of the United States Government: Fiscal Year 1977, p. 153 (1976).

Radical Reform 85–110 (1969). More importantly, routine availability of transcripts would minimize the danger—which is not so insignificant that it can be safely ignored—that the rights of an indigent defendant may be lost because of the ineptitude of his appointed counsel.

I recognize that my view does not reflect a necessary reading of the statute as applied to respondent's § 2255 motion, but it certainly is permissible to rule as a matter of law that his allegations are sufficient to plead a non-frivolous claim that cannot be resolved without a transcript.[10] Such a ruling would have the added virtue of avoiding the constitutional issue discussed in Part III of the plurality's opinion. Cf. *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401. On balance, I would therefore affirm the judgment of the Court of Appeals for the Ninth Circuit.

---

[10] Cf. *Hospital Bldg. Co.* v. *Rex Hospital Trustees,* 425 U. S. 738, 746–747; *Haines* v. *Kerner,* 404 U. S. 519, 520–521; *Conley* v. *Gibson,* 355 U. S. 41, 45–46.