Jerry C. RUSH and Joseph W. Dougherty,
Petitioners-Appellants,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 75–1652.

United States Court of Appeals,
Seventh Circuit.

Heard Jan. 21, 1977.

Decided June 29, 1977.

Kenneth N. Flaxman, Chicago, Ill., Jerry C. Rush, Joseph W. Dougherty, Marion, Ill., for petitioners-appellants.

Frederick J. Hess, U.S. Atty., E. St. Louis, Ill., for respondent-appellee.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

PER CURIAM.

Petitioners Rush and Dougherty were sentenced in 1973 in the District Court for the Eastern District of Illinois for various federal crimes arising from their attempted escape from the Marion, Illinois, Penitentiary in 1971. A direct appeal ensued and, in an unpublished order, we affirmed in part and reversed in part. 500 F.2d 1405 (7th Cir. 1974) (Table). Certiorari was sought and denied. 419 U.S. 1091, 95 S.Ct. 683, 42 L.Ed.2d 683. At each stage of these proceedings, petitioners were represented by appointed counsel. Pursuant to 28 U.S.C. § 753(g), a transcript of the petitioners' trial was generated for use on the direct appeal. Following the certiorari denial terminating the appellate proceedings, the transcript and common law record were returned to the district court.

In May 1975, petitioners filed a *pro se* "Motion for Reporter's Verbatim Transcripts at Government Expense" in order that "they m[ight] prosecute a collateral attack upon [their] conviction[s]." The motion sought transcripts of their separate arraignments as well as the transcripts of the replacement of their counsel as ordered by the district court, the trial, all *in camera* and sidebar proceedings at which petitioners were not present, and their sentencing by the district judge. The motion disclosed their incarcerated status and appended affidavits supported a claim of indigency. Although the motion conclusorily alleged only that the convictions had been procured "in violation of the Fifth and Sixth Amendments of the Federal Constitution," the petitioners averred that

"Unless this Court requires the respondent to provide them with the documents

herein sought they will be further deprived of equal protection and therefore due process of law in that they shall be foreclosed *habeas corpus* relief by reason of their poverty and therefore inability to pay the costs of the same."

The district court granted leave to proceed *in forma pauperis* but dismissed the motion without process being served on the respondent. The district judge construed the pleading as a 28 U.S.C. § 2255 motion or, in the alternative, as a 28 U.S.C. § 753(f) motion for free transcripts. As a Section 2255 motion, relief was denied because of the conclusory nature of the asserted constitutional deprivation. As a Section 753(f) motion, relief was denied because petitioners had failed to show a "particularized need" for the transcripts sought.

This appeal resulted, with our jurisdiction invoked under 28 U.S.C. § 2253. On September 5, 1975, petitioners filed their *pro se* brief relying principally on *MacCollom v. United States,* 511 F.2d 1116, 1124 (9th Cir. 1975), reversed, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666, which held that "an indigent federal prisoner, permitted to proceed *in forma pauperis,* who has not yet obtained a transcript of his criminal trial, is entitled to such a transcript, upon request, in order to assist him in the preparation of a post-conviction motion under 28 U.S.C. § 2255." The Government's answering brief was filed on October 31, 1975. In addition to the district court's rationale of dismissal of no showing of particularized need, the Government also maintained petitioners had made "no showing that the trial transcript furnished to them pursuant to 28 U.S.C. Sections 753 and 1915 which enabled them to perfect their direct appeal \* \* \* was unavailable."[1] Because certiorari was granted in *MacCollom,* we held this appeal in abeyance pending the Supreme Court's decision.

■ After *MacCollom* was handed down on June 10, 1976, a new briefing schedule was set. This Court appointed counsel for petitioners who filed a supplemental brief in their behalf which was answered by the Government. After oral argument by petitioners' counsel, and in the absence of a representative of the Government, we vacated the district court's order from the bench.[2] Because of a need for guidance in this Circuit, we take the somewhat unusual step of publishing an opinion supporting our vacation, at oral argument, of the district court's order.

The procedural history of this case has been laid out in some detail in order to highlight the clumsiness of the present system. By identifying the correct categorization of the petitioners' motion, the outline of a better system for securing pre-existing records for collateral attacks by federal prisoners on their convictions takes form. First, the motion itself was not properly a vehicle for collateral review under 28 U.S.C. § 2255 because the *pro se* pleading only asked that petitioners be supplied with portions of the record from the direct appeal. Since petitioners did not immediately seek to "vacate, set aside or correct [their] sentence" (28 U.S.C. § 2255) by way of their motion, the district court erred in considering the sufficiency of the pleading under 28 U.S.C. § 2255 standards. Therefore the dis-

---

1. In a *pro se* supplemental "brief," the petitioners demonstrated by way of a letter from the law firm that had been appointed as Rush's counsel for the direct appeal that the original transcript of the trial could not be sent to petitioners without a court order. Counsel did send the documents in her possession, but these "contained no verbatim notes of testimony or any part thereof, but only copies of docket entries, etc., which, while helpful, are not the documents sought by appellants in this action and are insufficient for use in mounting a collateral attack upon the [underlying] convictions \* \* \*" *Supplemental pro se* brief at 2.

2. On June 2, 1977, petitioner Dougherty filed an "Application for Interim Relief" seeking an order to implement our vacation from the bench since the opinion herein had not yet been published. By order of June 3, 1977, the Court granted the application and directed the district court to transfer the record in the underlying criminal proceeding to this Court to be forwarded upon receipt by our Clerk to petitioner Dougherty, pursuant to our Circuit Rule 4(g), for use in the preparation of his brief in his collateral appeal of the underlying criminal conviction.

**458**

trict court's denial of petitioners' motion on Section 2255 grounds must be vacated.

■ Second, the motion could not properly be construed as a 28 U.S.C. § 753(f) request (based on the subject-matter jurisdictional grant of 28 U.S.C. § 2255) that fees for transcripts be paid by the United States. Here no transcript fees would accrue because the "records and files" sought of the underlying criminal case were already in existence. Since the district court could frank the record through the mails to one of the petitioners[3], no "money appropriated for [the] purpose [of providing transcripts]" need be expended in providing the original record[4] to appellants herein. Therefore the district court's denial of petitioners' motion on Section 753(f) grounds is also vacated.

■ Rather, the appropriate standard for evaluating petitioners' motion arises from the fact that court files are public documents. Indeed, 28 U.S.C. § 753(b) requires that:

> "The original notes or other original records and the copy of the transcript in the office of the clerk shall be open during office hours to inspection by any person without charge."

However, local Rule 16 of the United States District Court for the Eastern District of Illinois provides:

> "No person shall withdraw any original pleading, paper, record, model o exhibit from custody of the clerk or other officer of this court having custody thereof, except upon written order of a judge of this court, leaving a proper receipt with the clerk."

The central question presented by this appeal is whether and under what circumstances persons collaterally challenging an underlying criminal conviction may have personal access to the record in the underlying case when incarceration prevents a personal visit to the Clerk's office and indigency prevents hiring a lawyer to make a vicarious visit. Because the incarcerated petitioners had no appointed counsel for their collateral attack and since their present appointed counsel will not represent them in any further proceedings in the Eastern District, they have an absolute personal right to reasonable access to the pre-existing files and records of their underlying case.

### The Right to the Underlying Record

■ Petitioners sought access to the record of their criminal case in order "to obtain the assistance of paralegal practitioners and law school services" for the purpose of eventually filing a 28 U.S.C. § 2255 motion. It is now settled beyond doubt that prisoners have a substantive constitutional right of access to the courts and that inmate access must be " 'adequate, effective and meaningful.' " *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed. 2d 72. Because such access is impossible without a trial transcript or adequate substitute, the Supreme Court has nearly uniformly required that the prosecuting sovereignty provide trial records to inmates unable to buy them. "The only cases that have rejected indigent defendants' claims to transcripts have done so either because an adequate alternative was available but not used, *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), or because the request was plainly frivolous and a prior opportunity to obtain a transcript was waived. *United States v. MacCollom*, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976)." *Bounds v. Smith, supra*, 430 U.S. at 822 n.8, 97 S.Ct. at 1495. "And even as it rejected a claim that indigent defendants

---

**3.** When there are more than two petitioners seeking access to one original transcript, the district court should on agreement of all petitioners send the transcript to a prisoner agreed to by the other prisoners or to the several prisoners in a pre-agreed order. We leave to a specific factual case the discussion of what to prescribe if there are two or more petitioners no one of whom will consent to another petitioner's having possession of the original record before him.

**4.** Although it is not clear from the motion, petitioners' counsel informed us at oral argument that petitioners only seek and have always only sought the original of the record already in existence in the files of the district court.

have a constitutional right to appointed counsel for discretionary appeals, the Supreme Court [has] reaffirmed that [the prosecuting sovereignty] must 'assure the indigent defendant an adequate opportunity to present his claims fairly.'" Nothing in *United States v. MacCollom, supra,* departed from the notion that " '[m]eaningful access' to the courts is the touchstone." *Bounds v. Smith, supra,* 430 U.S. at 823 and n.9 and 828 n.16, 97 S.Ct. at 1495. Moreover, when the prosecuting sovereignty is the federal government so that no comity considerations arise, the federal courts may also draw on their inherent supervisory powers to establish more liberal access than that mandated by the Constitution.

■ Here the exceptional situations detailed in *Bounds* when transcripts need not be provided are not present. While Rush was sent "the only copy we have of the transcript in the case," this "transcript" was at best only partial and at worst did not contain the verbatim notes of the trial. See note 1 *supra.* Thus no *Britt v. North Carolina* alternative to the requested record was available to petitioners. Unlike *MacCollom,* the petitioners here took a direct appeal and therefore did not waive their opportunity to obtain a transcript. Moreover, they did not have counsel appointed in the district court for the collateral proceeding as had MacCollom, a factor explicitly relied on by Justice Blackmun in casting his vote for the 5–4 judgment of the *MacCollom* Court. 426 U.S. at 329–330, 96 S.Ct. 2086.

In any event, it must be underscored that the sought-after transcripts already exist. Denying access to court files to prisoners, given the statutory inspection rights granted by 28 U.S.C. § 753(b), works an invidious discrimination which cannot pass muster under the equal protection pregnant of the Fifth Amendment's due process clause when the important substantive constitutional right of access to the courts is implicated. *Warden of Wisconsin State Prison (Moeck v. Zajackowski),* 541 F.2d 177 (7th Cir. 1976). Because a "privately retained

counsel, under similar circumstances, when his client's resources are not unlimited, would [most assuredly study the record] for his client," *United States v. Jonas,* 540 F.2d 566, 569, n.3 (7th Cir. 1976), we cannot hold this discrimination to be constitutionally harmless.

*Procedure to Vindicate Right of Access*

■ Section 2255 requires that notice be served on the United States Attorney "[u]nless the motion and the *files and records of the case* conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (emphasis supplied). Unfortunately, the district judge apparently did not scan the record in the underlying criminal case, for he based his order on the premise that the reporter's verbatim notes had to be transcribed, thereby generating a fee for the transcript. It is regrettable that the flood of habeas petitions in the district courts caused the district court to overlook the fact that a transcript was already in existence. But the command of Section 2255 must be followed, and this case serves as a good example of how the short time invested in an initial record scan by the district court can result in a significant judicial economy in the long run. See *United States v. Jonas, supra,* at 573 (7th Cir. 1976).

■ Access to the underlying criminal record has been made available to petitioner Dougherty by our order of June 3, 1977. See note 2 *supra.* However, this case is not moot since Rush may also wish to seek individualized access to this record. If Rush does make such a motion, the district court is directed to enter an order pursuant to its local Rule 16 providing Rush access to the record as well as providing appropriate safeguards to maintain the record's integrity similar to those detailed in our Circuit Rule 4(g). Access is, of course, most conveniently accorded and appropriate safeguards are most easily fashioned at the district court level. Consequently, future requests for the pre-existing record in the underlying criminal proceeding should be granted as of right by the district courts to

prisoners seeking to use the record to prepare a collateral attack on their conviction.

The order of May 29, 1975, is vacated and remanded for further proceedings consistent herewith.