101 F.3d 686
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Robert CARPENTER, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-2543.
 United States Court of Appeals, Second Circuit.
 June 10, 1996.
 
 APPEARING FOR APPELLANT: ROBERT CARPENTER, pro se, Southampton, NY.
 APPEARING FOR APPELLEE:SUSAN CORKERY and SHARI LEVENTHAL, Assistant U.S. Attorneys, E.D.N.Y., Brooklyn, NY.
 E.D.N.Y.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Present: FEINBERG, JACOBS, CABRANES, Circuit Judges.
 
 
 1
 Robert Carpenter pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 and was sentenced to thirty months in prison, which he has served. He did not appeal his conviction or sentence.
 
 
 2
 Carpenter brought a habeas corpus petition under 28 U.S.C. § 2255 challenging his conviction and sentence. His petition contained nine claims for relief and included a request for a copy of the trial transcripts.
 
 1. Trial Transcripts
 
 3
 The district court concluded that the trial transcripts were not relevant to Carpenter's habeas petition and therefore denied Carpenter's request for a free copy of the transcripts. Carpenter claims that this violated his due process rights.
 
 
 4
 Congress has decided that § 2255 petitioners have the right to free trial transcripts only if "the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C. § 753(f); see United States v. MacCollom, 426 U.S. 317, 320-21 (1976) (plurality opinion). These limitations on a petitioner's right to free trial transcripts are consistent with the Due Process Clause. MacCollom, 426 U.S. at 328 (Rehnquist, J., for four justices); id. at 330 (Blackmun, J., concurring) ("Clearly, there is no constitutional requirement that the United States provide an indigent with a transcript when that transcript is not necessary in order for him to prove his claim, or when his claim is frivolous on its face."); Crossley v. United States, 538 F.2d 508, 509 (2d Cir.1976) (per curiam). The district court therefore did not violate Carpenter's due process rights when it denied his request for free trial transcripts on the ground that the transcripts were not relevant to his habeas petition.
 
 2. The Nine Claims for Relief
 
 5
 The requested remedy for three of Carpenter's nine substantive claims is damages. None of the three attacks his conviction or sentence. Thus, the district court properly dismissed these claims, without prejudice to Carpenter's right to raise them in a civil lawsuit. Carpenter v. United States, 894 F.Supp. 95, 102 (E.D.N.Y.1995).
 
 
 6
 Carpenter's other six claims, all rejected by the district court, are as follows: (1) his due process rights were denied by the district court's excessive delay in handling his petition; (2) he was not given the opportunity to challenge errors in his presentence report; (3) the government breached the plea agreement a) when it opposed Carpenter's motion to reduce his sentence after agreeing to take no position on his sentence and b) when the IRS levied a tax assessment against him in connection with his crime after the government had agreed that no such assessment would be brought; (4) his plea was not voluntarily and intelligently made, because mistaken advice and pressure from his lawyer persuaded him to plead guilty; (5) his Sixth Amendment right to effective assistance of counsel was violated because his lawyer, who had a job application pending with the U.S. Attorney's office for the Eastern District of New York at the time of Carpenter's trial, had a conflict of interest; and (6) his trial should have been severed from the trial of his co-defendant.
 
 
 7
 On Carpenter's first, second, fourth, fifth, and sixth claims, we affirm the district court for the reasons stated in its thorough opinion. See id. at 98 (first); id. at 98-99 (second); id. at 100 (fourth); id. at 100-101 (fifth); id. at 101-102 (sixth). In rejecting Carpenter's first claim, we also reject his related contention on appeal that the government excessively delayed in responding to his petition and that the district court therefore erred in denying his motions for a default judgment.
 
 
 8
 We also affirm the district court on part (a) of Carpenter's third claim (his claim that the government breached the plea agreement by opposing his motion for a reduction in sentence) for the reasons stated in the district court's opinion. See id. at 99-100. However, the district court does not seem to have ruled on part (b) of Carpenter's third claim. Carpenter contends that the government promised as part of the plea agreement not to impose any tax liability on him in connection with the investigation into his crime. As part of his habeas petition, Carpenter attached a notice from the IRS assessing him over $13,000 in tax liability "as a result of activities stemming from the investigation of the Norstar bank loan," which appears to be one component of Carpenter's bank fraud.
 
 
 9
 The terms of the plea agreement were apparently negotiated during trial and set out at a plea allocution that took place during an interruption in Carpenter's trial. The government argues on appeal that the plea agreement "as reasonably understood" did not encompass any promises related to Carpenter's tax liabilities. Our review of the plea allocution transcript convinces us that it is at least ambiguous whether the agreement included such a promise.
 
 
 10
 The terms of the agreement were stated twice. The first statement was made by Carpenter's lawyer at the very beginning of the plea allocution. After announcing to the court that his client wished to plead guilty to one of the three charged counts in exchange for the government dropping the other two, Carpenter's lawyer then listed the government's other promises:
 
 
 11
 The government also indicated that they would not call him as a witness at this trial and this plea would be in satisfaction of all the charges that can be brought against him concerning the bank loans and other related activities, with the union and Norstar activities and other activities that came to light during this investigation. That includes any civil tax liability, if there is any.
 
 
 12
 (Emphasis added.) Based on this statement, uncontradicted by the government or the court, Carpenter could reasonably have understood the agreement to include a promise that the government would not assess any "civil tax liability" against him "concerning the bank loans and other related activities."
 
 
 13
 Later in the allocution, the terms of the agreement were stated a second time, when the court asked the Assistant U.S. Attorney to explain the plea agreement. The prosecutor began his explanation by referencing the statement made by Carpenter's lawyer: "The agreement as counsel stated, we will move to dismiss Count 1 at the time of sentencing." (Emphasis added.) He then proceeded to state some of the agreement's terms, but did not mention a promise to refrain from taking any other government action against Carpenter in connection with the investigation. After the court asked Carpenter's lawyer if the prosecutor's statement of the agreement's terms was correct, the lawyer responded: "Furthermore, the government has ... agreed not to call Mr. Carpenter as a witness in this trial and the guilty plea in this charge would cover all activities which [were] revealed as a result of the investigation into the bank loans." The prosecutor then added: "Into the aspect involving these bank loans, yes." At this point, the court asked Carpenter if "that [is] your understanding" of the agreement, and Carpenter answered "yes."
 
 
 14
 On its own, this second statement of the agreement's terms does not suggest that any promises were made concerning tax liability. But since the second statement references the first statement ("as counsel stated") and echoes some of its phrasings ("would cover all activities which [were] revealed as a result of the investigation into the bank loans"), it would be reasonable to believe that the second statement was intended to be consistent with the first. At the least, nothing in the second statement directly contradicts anything in the first. Thus, taking the plea allocution as a whole and construing the statements of the plea agreement's terms strictly against the government, see United States v. Ready, 82 F.3d 551, 559 (2d Cir.1996), we conclude that it would have been reasonable for Carpenter to believe that the agreement included a promise concerning his civil tax liability.
 
 
 15
 We therefore remand to the district court on this issue, so that it may make factual findings and legal conclusions in the first instance. Though we have concluded that the plea allocution transcript does not support the government's argument, this does not constitute a determinative factual finding on the matter, because we do not know whether the allocution transcript is the only evidence of the plea agreement's terms. If it is and if the district court finds that the plea agreement, when properly construed, included a promise that Carpenter would not be assessed (assumedly by the IRS) any "civil tax liability" in connection with its investigation, several questions remain: was this a promise that the U.S. Attorney's office was empowered to make? even if this was an enforceable promise, what was the precise scope of this promise? does the assessment of tax liability for 1988 constitute a breach of the promise? We have not considered these questions and take no position on them, or the consequences that flow from them, leaving the district court to answer them on remand.
 
 
 16
 We therefore affirm the district court's denial of Carpenter's habeas petition on all grounds except for his claim that the disputed tax assessment constitutes a violation of the plea agreement. We remand for further proceedings on this issue alone.