(Slip Opinion)

# Authority of the Department of Health and Human Services to Pay for Private Counsel to Represent an Employee Before Congressional Committees

The Department of Health and Human Services may pay for private counsel to represent an employee who has been subpoenaed to appear before the staff of two congressional committees for a deposition at which agency counsel is not permitted to be present.

January 18, 2017

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF HEALTH AND HUMAN SERVICES

You have asked whether the Department of Health and Human Services ("HHS") may pay for private counsel to represent an employee who has been subpoenaed to appear before the staff of two congressional committees for a deposition at which agency counsel is not permitted to be present.[1] We advised you orally that HHS has the authority to provide private counsel and that the provision of counsel may be considered a necessary expense that can be paid from the applicable HHS appropriation. This memorandum memorializes and further explains the basis for that advice. In brief, where a congressional committee questions an agency employee at a deposition or interview about actions performed within the scope of her employment, it may be in the agency's interest to provide private counsel to represent the employee in her individual capacity when the committee prohibits counsel for the agency from attending the deposition or interview. An agency may thus retain and pay for such counsel if it has both statutory authority and an available appropriation to do so, as we conclude HHS does, based on its representations regarding the circumstances here. In Part I, we discuss the factual background, including the congressional procedures applicable to this deposition. In Part II, we set out the governing legal framework. In Part III, we apply this framework to the facts at issue here.

---

[1] *See* Letter for Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Margaret M. Dotzel, Acting General Counsel, Dep't of Health and Human Services (Aug. 24, 2016) ("HHS Letter"). In preparing this opinion, we also requested and received the views of the Civil Division of the Department of Justice. *See* Memorandum for Ginger Anders, Deputy Assistant Attorney General, Office of Legal Counsel, from Kali N. Bracey, Deputy Assistant Attorney General, Torts Branch, Civil Division, Dep't of Justice (Oct. 14, 2016).

## I.

## A.

We understand that your question was prompted by a joint oversight investigation of the House Committee on Ways and Means and the House Committee on Energy and Commerce (collectively, "the Committees") into the system of cost-sharing reduction ("CSR") payments implemented by HHS and the Department of the Treasury pursuant to the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) ("ACA").[2] As part of their oversight investigation, the Committees issued a subpoena to an HHS employee to appear for a deposition before Committee staff relating to HHS's implementation of the CSR payments. We understand from HHS that neither the Committees nor any Executive Branch entity has alleged or suggested that the subpoenaed employee engaged in any misconduct. We also understand from HHS that the information sought at the deposition is related to HHS's implementation of the CSR payment program, including official actions taken by the employee and other Executive Branch personnel within the normal scope of their duties in the course of that implementation.

Attached to the subpoena was a set of procedures governing the deposition. The procedures included a provision stating that agency "[w]itnesses may be accompanied at a deposition by counsel to advise them of their rights," but "counsel for other persons, or for agencies under investigation, may not attend." *See* 161 Cong. Rec. E21 (daily ed. Jan. 7, 2015) (Extensions of Remarks) (Rep. Sessions submitting the "Procedures for the Use of Staff Deposition Authority") ("*Deposition Procedures*"). The procedures also mandate that an agency witness "may refuse to answer a question only to preserve a privilege." *Id*. If a witness refuses to answer a question to preserve a privilege, "the chair of the committee may rule on any such objection after the deposition has adjourned." *Id*. The chair may then overrule the objection in writing and, with proper notice, "order[] a witness to answer any question to which a privilege objection was

---

[2] CSR payments are payments the government makes to insurers to offset the "cost-sharing reductions" that insurers are required to provide under the ACA to eligible individuals to reduce those individuals' deductibles, coinsurance, copayments, and similar charges. *See U.S. House of Representatives v. Burwell*, 185 F. Supp. 3d 165, 171–72 (D.D.C. 2016) (describing the CSR payments).

lodged" at a reconvened deposition. *Id*. "A deponent who refuses to answer a question after being directed to answer by the chair in writing may be subject to sanction." *Id*.

## B.

When congressional committees seek to question employees of an Executive Branch agency in the course of a congressional oversight inquiry of the agency, the Executive Branch's longstanding general practice has been for agency attorneys to accompany the witnesses.[3] *See Representation of White House Employees*, 4B Op. O.L.C. 749, 754 (1980) ("[L]egitimate governmental interests which arise whenever executive branch employees are called to testify before the Congress . . . [are] [o]rdinarily . . . monitored by agency counsel who accompany executive branch employees."); Memorandum for the Deputy Attorney General from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Reimbursement of Anne M. Burford for Private Counsel Fees* at 1–2 (May 3, 1983) ("*Burford I*"). That practice reflects the significant Executive Branch interests implicated by the oversight process. The employees' testimony occurs pursuant to the constitutionally mandated accommodation process, through which the Executive Branch provides to Congress information necessary to perform its legislative functions in a manner consistent with the Executive Branch's constitutional and statutory responsibilities and confidentiality interests. *See United States v. AT&T*, 567 F.2d 121, 127, 130–31 (D.C. Cir. 1977) ("[E]ach branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation."); Memorandum for the Heads of Executive Departments and Agencies from President Ronald Reagan, *Re: Procedures Governing Responses to Congressional Requests for Information* at 1 (Nov. 4, 1982) (providing that the "tradition of accommodation should continue as the primary means of resolving conflicts between the Branches"). Attorneys from the agency historically have accompanied the agency's employees in order to protect Executive Branch

---

[3] In litigation, by contrast, the Department of Justice, under the supervision of the Attorney General, has the exclusive authority to represent the interests of the United States, except in situations covered by an express statutory exception. *See* 28 U.S.C. §§ 516, 519; 5 U.S.C. § 3106; *The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47, 47–48 (1982).

confidentiality and other institutional interests; to assist the employees in providing clear, accurate, and complete information in response to a congressional oversight inquiry; to support the employee in the face of potentially hostile questioning; and to ensure that any restrictions on the scope of the questioning are observed.[4]

In this case and in some previous oversight inquiries, however, congressional committees have refused to permit agency counsel to accompany agency employees to protect Executive Branch interests at interviews or depositions. On such occasions, we have advised that the agency may consider obtaining alternate counsel to represent either the agency or, if necessary, the employee. Alternate counsel may be obtained either by detailing attorneys from another government agency or—as relevant here—by using appropriated funds to retain and pay for private counsel. When alternate counsel represents the agency, or represents the employee in her official capacity, counsel's client is the agency, not the employee.[5] *See Burford I* at 3 n.3 ("[S]uits or subpoenas against employees in their

---

[4] *See, e.g.*, *Reimbursing Justice Department Employees for Fees Incurred in Using Private Counsel Representation at Congressional Depositions*, 14 Op. O.L.C. 132, 133 (1990) ("*Reimbursing Justice Department Employees*") (the Department makes employees available "[i]n light of the oversight purpose of the [congressional] interviews" and "Department counsel or other representative will normally accompany the witness" in such interviews); Memorandum for Peter J. Wallison, Counsel to the President, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel at 2 (Sept. 8, 1986) (a policy requiring the presence of government counsel at congressional interviews "protect[s] the confidentiality of privileged information" and "ensur[es] that any restrictions on the scope of the interview are observed by all parties"); Letter for Henry Waxman, Chairman, and Tom Davis, Ranking Minority Member, Committee on Oversight and Government Reform, U.S. House of Representatives, from Dinah Bear, General Counsel, Council on Environmental Quality, Executive Office of the President at 2 (Mar. 12, 2007) (in an oversight deposition of a former employee the agency has "a strong interest in ensuring that the information provided on its behalf is accurate, complete, and correct," a "fundamental and well-recognized interest in ensuring that its personnel are not pressed into revealing privileged information belonging to the Executive Branch," and "a strong interest in providing reassurance and support to staff who are called to Congress to provide information about their work-related activities").

[5] The attorney's fiduciary duties and obligations run to the entity on whose behalf the employee is appearing, not to the employee herself. *See Restatement (Third) of the Law Governing Lawyers* § 97 cmt. c (Am. Law Inst. 2000) ("A lawyer who represents a governmental official in the person's public capacity must conduct the representation to advance public interests as determined by appropriate governmental officers and not, if different, the personal interests of the occupant of the office.").

official capacities are tantamount to suits or subpoenas against the government itself."). When counsel represents the employee in her individual capacity, by contrast, the attorney owes a fiduciary duty and a duty of confidentiality to the employee, not the agency. This opinion addresses the circumstances under which an agency may use appropriated funds to pay counsel to represent the employee in her individual capacity.[6]

## II.

Appropriations law, prior opinions of this Office, and historical practice establish the legal framework governing an agency's ability to retain and pay for private counsel to represent its employees in a congressional oversight inquiry. A review of these sources makes clear that an agency may retain and pay for private counsel to represent an employee in a deposition or interview before a congressional committee where three conditions are met. First, representation of the agency by agency counsel at the deposition must be inappropriate or impermissible. Second, representation by private counsel must be in the government's interest, and the government may not pay fees incurred in representing the purely personal interests of the employee. Third, the agency must have the organic statutory authority and an available appropriation to retain and pay for private counsel.

The "basic rule" governing the use of appropriated funds to pay for private counsel is that "a general appropriation may be used to pay any expense that is necessary or incident to the achievement of the underlying objectives for which the appropriation was made." *Indemnification of Department of Justice Employees*, 10 Op. O.L.C. 6, 8 (1986) (quoting General Accounting Office, *Principles of Federal Appropriations Law* 3-12 to 3-15 (1st ed. 1982)). The Constitution directs that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. Congress has adopted several statutes reflecting this constitutional principle, among them the Purpose

---

[6] You have not asked about, and we have not evaluated, the constitutional concerns that may be raised by the Committees' prohibition on attendance by counsel representing the agency. We do note, however, that such a prohibition could potentially undermine the Executive Branch's ability to protect its confidentiality interests in the course of the constitutionally mandated accommodation process, as well as the President's constitutional authority to consider and assert executive privilege where appropriate.

Act, 31 U.S.C. § 1301(a), which the Comptroller General has described as "one of the cornerstones" of federal appropriations law. 1 Government Accountability Office, *Principles of Federal Appropriations Law* 4-6 (3d ed. 2004) ("*Federal Appropriations Law*"). The Purpose Act provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." 31 U.S.C. § 1301(a); *see also United States v. MacCollom*, 426 U.S. 317, 321 (1976) (noting the "established rule" that "the expenditure of public funds is proper only when authorized by Congress"). As this Office has previously recognized, however, the Purpose Act "leaves federal agencies with 'considerable discretion in determining whether expenditures further the agency's authorized purposes and therefore constitute proper use of general or lump-sum appropriations.'" *State and Local Deputation of Federal Law Enforcement Officers During Stafford Act Deployments*, 35 Op. O.L.C. __, at *8 (Mar. 5, 2012) ("*Stafford Act Deployments*") (quoting *Use of General Agency Appropriations to Purchase Employee Business Cards*, 21 Op. O.L.C. 150, 153 (1997)). "If the agency believes that the expenditure bears a logical relationship to the objectives of the general appropriation, and will make a direct contribution to the agency's mission, the appropriation may be used." *Indemnification of Department of Justice Employees*, 10 Op. O.L.C. at 8; *see also Indemnification of Treasury Department Officers and Employees*, 15 Op. O.L.C. 57, 60 (1991) (noting that an expenditure is permissible if it "directly" or "incidentally" accomplishes a specific congressional purpose" or "is generally necessary for the realization of broader agency objectives covered by the appropriation" (internal quotation marks omitted)).[7]

---

[7] This understanding of an agency's discretion under the Purpose Act and Constitution mirrors the conclusions of the Comptroller General. The Comptroller General has found an expenditure permissible as a necessary expense when the expenditure, among other things, "'bear[s] a logical relationship to the appropriation sought to be charged,'" by "'mak[ing] a direct contribution to carrying out either a specific appropriation or an authorized agency function for which more general appropriations are available.'" *Stafford Act Deployments*, 35 Op. O.L.C. at *8 (quoting 1 *Federal Appropriations Law* at 4-21); *see also Department of Homeland Security—Use of Management Directorate Appropriations to Pay Costs of Component Agencies*, B-307382, 2006 WL 2567514, at 4 (Comp. Gen. Sept. 5, 2006) ("Even if a particular expenditure is not specifically provided for in the appropriation, the expenditure may be permissible under the 'necessary expense doctrine' if it will contribute materially to the effective accomplishment of the [agency] function."). Although the legal interpretations and opinions of the Comptroller General

In the context of retention of private counsel, this Office has concluded that the "logical relationship" standard may be met when the representation is in the government's interest, the employee is being questioned about conduct performed within the scope of her employment, and agency counsel is not available. In 1980, for instance, we concluded that the White House could use appropriated funds to retain private counsel to accompany White House employees to represent the government's interests when those employees testified about their official duties before a Senate committee. *Representation of White House Employees*, 4B Op. O.L.C. at 753–55. We explained that "there are . . . legitimate governmental interests which arise whenever executive branch employees are called to testify before the Congress," *id.* at 754, including interests in defending official policies and protecting the government's confidentiality interests, *id.* at 753. We recognized that those interests are normally protected by agency counsel, but because the White House had acquiesced in the Committee's demand that White House lawyers not serve as counsel, we concluded that the White House could retain private counsel to represent the government's interests.[8] *Id.* at 754.

Similarly, this Office, with the concurrence of the Civil Division, concluded in 1990 that the Department of Justice ("DOJ" or the "Department") could reimburse its employees for expenses they incurred retain-

---

are not binding on Executive Branch agencies, they "often provide helpful guidance on appropriations matters and related issues." *Stafford Act Deployments*, 35 Op. O.L.C. at *9 n.8 (internal quotation marks omitted).

[8] That inquiry is consistent with the analysis employed in opinions issued by the Comptroller General. In a 1979 opinion, the Comptroller General approved the CIA's retention of a private attorney to represent an employee who was called to testify before Congress and required to defend himself before professional organizations regarding work he performed within the scope of his employment. *See Reimbursement by Central Intelligence Agency of Employee's Legal Fees*, B-193712, 1979 WL 12508 (Comp. Gen. May 24, 1979). In that opinion, the Comptroller General concluded that a general appropriation allowing the CIA to expend funds "for purposes necessary to carry out its functions" permitted the agency to reimburse the employee for his legal fees, because the conduct about which the employee was questioned "was in furtherance of an agency function" and "necessary to carry out the Agency's functions." *Id.* at 2. In a later opinion, the Comptroller General concluded that, where agency counsel was not available, private counsel could be permissibly retained when "representation of the employee is in the Government's interest," and the employee "performed the conduct in issue within the scope of his employment." *International Trade Commission—Legal Representation*, 61 Comp. Gen. 515, 516 (1982).

ing private counsel to represent them in their official capacities in depositions before a congressional committee. *Reimbursing Justice Department Employees*, 14 Op. O.L.C. at 137–38. We explained that the committee's rules prohibited agency counsel from attending the depositions, *id.* at 133–34, and that there were "sufficient governmental interests . . . at stake in all of the depositions to justify representation by Department counsel—and when the Committee objected to the presence of Department counsel, representation by private counsel paid for by the Department." *Id.* at 137. We also noted that the employees' testimony pertained to their official duties. *Id.* at 133–34. In light of those considerations, we concluded that DOJ could use appropriated funds to reimburse the employees for legal fees incurred in connection with private counsel retained to represent them in their official capacities. *Id.* at 135 ("A number of opinions of this Office specifically hold that where Department representation would ordinarily be provided in a congressional investigation but is inappropriate under the specific circumstances, the Department may reimburse a government employee for legal fees incurred using private counsel.").

We have also concluded that in certain circumstances, it may be in the government's interest to pay for private counsel to represent an employee in her individual capacity in her testimony before congressional committees. In two memoranda written in 1983 and 1984, we stated that the EPA could use appropriated funds to reimburse former EPA Administrator Anne Burford for fees incurred by private counsel she had retained to represent her in her individual capacity in a congressional oversight inquiry. *Burford I* at 1; Memorandum for James A. Barnes, General Counsel, Environmental Protection Agency, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Payment of Private Counsel Fees Incurred by Anne M. Burford* at 1 (Mar. 12, 1984) ("*Burford II*"). In reaching that conclusion, we looked to the Department's regulations governing the provision of individual-capacity representation to federal employees as a guide.[9] *Burford I* at 3–4 & n.3. We noted that those regulations, consistent with the analysis described above, provide that representation is appropriate where "1) the employee was acting in the scope of his employment and 2) representation is in the interest of the United States." *Id.* at 4; *see* 28 C.F.R. §§ 50.15, 50.16.

---

[9] We noted, however, that the DOJ regulations did "not necessarily bind the EPA." *Burford I* at 3–4 n.3.

With respect to the government-interest inquiry, we stated that "it is normally presumed to be in the interest of the United States to provide representation for employees sued (or subpoenaed) for acts performed within the scope of their employment." *Burford I* at 4 n.4. We therefore concluded that the regulations' threshold requirements for representation were met. *Id*. As a result, the regulations contemplated that DOJ ordinarily would provide representation by agency attorneys, "unless one of several conflicts of interest" was present, in which case DOJ could retain private counsel to represent the employee. *Id*. at 4–5. In Ms. Burford's case, we observed, DOJ attorneys were unable to represent her before the congressional committees because of an "apparent conflict" arising from the Department's investigation into the conduct that was the subject of the hearing. *Id*. at 3. Because representation by government counsel was inappropriate, and providing private representation for Ms. Burford in connection with her testimony about her official duties was in the government's interest, we concluded that the EPA could reimburse her for fees incurred by private counsel. *Id*. at 7. In our second memorandum concerning the Burford matter, we reaffirmed that "the retention of private counsel to represent [Ms. Burford] before congressional committees would have been and continues to be within the lawful authority of the EPA and the Department of Justice." *Burford II* at 5.

In determining whether and to what extent providing representation is in the government's interests, our Office has repeatedly emphasized the need to distinguish between government interests and personal interests. *See Representation of White House Employees*, 4B Op. O.L.C. at 754–55 ("Although it can become difficult to distinguish between personal and governmental interests, this point is one of considerable importance."). This need arises, in part, because general appropriations are available to pay for private counsel only when doing so is necessary to the furtherance of government interests; they are not available to pay for representation of purely private interests. *See id*. at 753; *see also Smithsonian Institution Use of Appropriated Funds for Legal Representation of Officers and Employees*, 70 Comp. Gen. 647, 649 (1991) ("It is well-established that federal funds may not be used to reimburse a government employee for legal fees incurred in connection with matters of personal, rather than official, interest.").

The existence of personal interests, however, "does not automatically preempt a legitimate government interest"; "[t]he two may exist side-by-

side." 1 *Federal Appropriations Law* at 4-58. In the case of representation before a congressional committee, we have recognized that "the official and personal interests of employees may overlap to a large extent." *Representation of White House Employees*, 4B Op. O.L.C. at 753. The "interests in presenting information correctly and clearly" in congressional proceedings "are both personal and governmental." *Id*. By contrast, the employee's interests "in avoiding federal criminal prosecution, civil liability to the United States or adverse action by a federal agency" are "purely personal," and the Executive Branch's interests in "asserting a governmental privilege [and] defending official policies and procedures" are "entirely governmental." *Id*. Although congressional testimony thus may implicate both government and personal interests, we have opined that "any personal interests are merely incidental to the governmental interests" when it has appeared that there was no "personal or official wrong-doing of which the [testifying] employees could fairly be accused." *Reimbursing Justice Department Employees*, 14 Op. O.L.C. at 137. We explained:

> Like all witnesses before Congress, the employees have "personal" interests such as being treated fairly, having a full and fair opportunity to respond, and avoiding being made an unfair target of congressional criticism; beyond that, these witnesses are appearing before Congress only because they did their jobs as Department employees. These personal interests would not appear to be of the kind this Office has previously identified as "purely personal."

*Id*. We therefore concluded that despite the presence of incidental personal interests, sufficient government interests were at stake to justify paying for representation for the employee. *Id*. The Department's regulations governing the retention of private counsel rely on this distinction as well, prohibiting reimbursement of expenses incurred for "legal work that advances only the individual interests of the employee."[10] 28 C.F.R. § 50.16(d).

---

[10] The Civil Division has informed us that it does not interpret these regulations to apply to a federal employee who appears as a witness before Congress or in civil litigation, except in circumstances in which the witness is also a defendant in a related civil suit or faces other potential adverse legal consequences related to the actions about which they face questioning. As a result, representation of a federal employee in her individual capacity by DOJ attorneys is available only when the individual faces a personal risk of

## III.

Under the principles established in these precedents, we conclude, as we previously advised you, that HHS may retain and pay for private counsel to represent its employee at the deposition before the Committees. Under the circumstances as you have described them to us, the three conditions set forth above have been satisfied. The Committees have prohibited HHS from providing agency counsel or any other attorneys representing the agency (i.e., substitute agency counsel) to accompany the employee. HHS has determined that providing individual representation of the HHS employee in these circumstances furthers important government interests and that doing so will not involve paying for counsel to represent the purely personal interests of the employee. And HHS has both organic statutory authority and an available appropriation to retain and pay for private counsel to represent the individual employee.

## A.

First, under the procedures that govern a deposition conducted by the Committees, neither HHS nor any substitute agency counsel is permitted to represent the agency at the deposition. As we have explained, HHS counsel would ordinarily represent HHS at a congressional proceeding in which an employee was providing testimony about the agency's implementation of the CSR program and her own involvement in that implementation in the course of her official duties. But here, HHS attorneys are not permitted to perform this function because "counsel . . . for agencies under investigation may not attend" the deposition. *See Deposition Procedures*.

Our writings suggest that when a congressional committee has prohibited counsel from a particular agency from attending an interview of an agency employee, either an attorney from another government agency or private counsel may substitute for agency counsel, accompanying the employee to the interview to represent the government's interests. *See Representation of White House Employees*, 4B Op. O.L.C. at 754; *Reimbursing Justice Department Employees*, 14 Op. O.L.C. at 134. That ar-

---

civil liability or other adverse legal consequences as a result of actions taken within the scope of her employment, and the Attorney General or her delegee determines that such representation is in the government's interest. *See* 28 C.F.R. §§ 50.15, 50.16.

11

rangement, however, also appears to be prohibited by the Committees' deposition procedures. Outside counsel substituting for HHS attorneys at the deposition would be representing the agency, not the individual. *See Representation of White House Employees*, 4B Op. O.L.C. at 755 (substitute agency counsel "must clearly understand that he is the Government's lawyer and not private counsel for the represented employee"). The attorney would be acting as substitute "counsel . . . for [the] agenc[y] under investigation," and thus would be barred by the Committees' procedures.[11] *See Deposition Procedures*. The Committees' procedures thus preclude HHS from accompanying its employee to the deposition to represent the agency's interests and preclude HHS from arranging for any outside counsel, whether from within the Executive Branch or from private practice, to accompany its employee to represent the agency's interests.

---

[11] Counsel representing the individual employee in her "official capacity" would be barred by the Committees' procedures for the same reason. As discussed, counsel who represents an employee in her official capacity would also be acting as "counsel . . . for [the] agenc[y]," *see supra* note 5, and would be prohibited from attending the deposition under the Committees' procedures as we understand them. *Cf. Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 703–04 (1949) (holding that a suit against a government employee was barred by sovereign immunity because the action at issue was "within [the officer's] authority" as a government official and "inescapably the action of the United States").

As suggested earlier, in the context of "representation in connection with Congressional subpoenas," we have opined that the "distinction between official capacity and individual capacity is difficult to make" because an employee's appearance before a congressional committee may "contain[] elements of both individual and governmental representation." *Burford I* at 3–4 n.3. Here, the Committees' deposition procedures do not allow for official-capacity representation, so any attorney retained by HHS must provide individual-capacity representation, pursuant to which the attorney owes duties of loyalty and confidentiality to the employee, not the agency. To be sure, the employee arguably could be said to be *testifying* in her official capacity. The Civil Division has informed us that it considers employees who are called to testify about their official duties, but who otherwise do not face individual liability in damages or some other personal legal jeopardy, to testify in their official capacities. By allowing only individual-capacity representation, however, the Committees' deposition procedures make it unnecessary to resolve whether the HHS employee has been subpoenaed to testify in her individual or official capacity. As noted above, therefore, this opinion addresses only whether HHS may provide individual-capacity representation to its employee, the same situation we addressed in the two *Burford* memoranda. *See Burford I* at 3–4 & n.3; *Burford II* at 3–4.

## B.

Second, it is reasonable for HHS to conclude that the provision of individual-capacity representation to the HHS employee is in the government's interest because she has been subpoenaed by the Committees to testify regarding actions taken in the course of her official duties, and she lacks the sort of purely personal interests that would preclude representation at government expense. The important government interests furthered by the representation include ensuring that the employee provides accurate and complete information, protecting her from inadvertently disclosing confidential information that she is not authorized to disclose, protecting her from questioning outside the scope of the deposition, supporting her in the face of potentially hostile questions from the Committees and their staffs, and preventing her from incurring substantial legal fees as a result of acts taken in the performance of her duties on behalf of the agency. As we have explained, it is "normally presumed to be in the interest of the United States to provide representation for employees sued (or subpoenaed) for acts performed within the scope of their employment." *Burford I* at 4 n.4. These employees "are appearing before Congress only because they did their jobs," *Reimbursing Justice Department Employees*, 14 Op. O.L.C. at 137, and the government has an interest in providing them representation—even when the representation pertains to the employee's individual capacity, *see Burford I* at 4–5 & nn.3–4.

In particular, providing individual-capacity representation furthers HHS's interest in protecting its employees from the burden of undergoing potentially hostile questioning and incurring legal fees as a result of actions taken in good faith on behalf of the agency. Our Office, the Comptroller General, and the Supreme Court have recognized on numerous occasions that forcing federal employees to defend themselves against the burdens of civil litigation and incur legal fees in doing so may chill the employees' exercise of their official duties. *See, e.g.*, *Indemnification of Treasury Department Officers and Employees*, 15 Op. O.L.C. at 61–63 (collecting authorities). As a result, providing counsel to employees facing such burdens serves important government interests in ensuring that Executive Branch employees acting in good faith may discharge their official duties and discretionary functions rigorously, without concern about potential reprisals or legal fees. *See Department of Justice Authority to Represent the Secretary of Housing and Urban Development in Certain Potential Suits*, 31 Op. O.L.C. 212, 216 (2007) ("[T]he United States has

an interest in defending an officer from suits arising from the faithful discharge of his statutory responsibilities . . . because it would be protecting an officer from the potential burden of litigation arising out of his service."); *see also Fees of District Attorneys*, 9 Op. Att'y Gen. 146, 148 (1858) ("When a[n] . . . executive officer is sued for an act done in the lawful discharge of his duty, the government which employed him is bound, in conscience and honor, to stand between him and the consequences.").

Although an employee subpoenaed to appear before a congressional committee for a deposition is not subject to civil liability, the proceeding nonetheless may be burdensome, and providing representation may further the government's interest in protecting the employee from that burden. Without counsel paid for by the agency, the employee would have to incur legal fees to have any representation. *See* Memorandum for Dick Thornburgh, Attorney General, and Stuart E. Schiffer, Acting Assistant Attorney General, Civil Division, from William P. Barr, Assistant Attorney General, Office of Legal Counsel, *Re: Reimbursement of Attorney Fees for Private Counsel Representing Former Government Officials in Federal Criminal Proceedings* at 18 (Oct. 19, 1989) ("[The employee] was caught in a power struggle between Congress and the executive branch. Such policy disputes are frequent, and should not invoke the specter of personal liability for attorneys['] fees for Administration officials simply, and properly, doing their jobs. The potential for abuse in such circumstances is profound."). Proceeding without representation would leave the employee to defend herself against potentially hostile questioning without any legal advocate—in a setting in which there is no neutral magistrate to moderate the parties' conduct or adjudicate objections. The government has an interest in providing representation to such an employee. That is particularly true when the agency instructs the employee not to answer certain questions in order to protect the Executive Branch's privileges and confidentiality interests, as it is the employee who ultimately faces the potential for sanctions as a result.[12]

---

[12] If the proceedings, including the potential for sanctions, evolve in a manner that gives rise to a conflict between the interests of the government and the employee, such that further representation is not in the government's interests, the agency may no longer pay for private counsel. *See Representation of White House Employees*, 4B Op. O.L.C. at 754; *cf.* 28 C.F.R. § 50.16(c)(2) ("Federal payment to private counsel for an employee

Private counsel representing the individual may also indirectly further the government's confidentiality interests. *Cf. Department of Justice Funding of Representation of Victims in Connection with a West German Prosecution*, 12 Op. O.L.C. 105, 107 (1988) ("[T]he existence vel non of a governmental interest in this case should not depend on the fact that the counsel we retain will technically be representing a private party, as opposed to the United States government itself."). To be sure, counsel representing the individual cannot fully protect those interests, as she may not assert government privileges and ultimately owes fiduciary duties to the individual employee, not the agency. *See Representation of White House Employees*, 4B Op. O.L.C. at 754–55. But that does not preclude private counsel from consulting with agency attorneys before or during the interview to understand where the government's confidentiality interests lie and what information the employee is authorized to disclose. Because the employee's testimony relates only to official actions taken in the scope of her employment, the information at issue in her testimony is agency information, not information that is personal to the employee. The Executive Branch controls the dissemination of such information. *See Authority of Agency Officials to Prohibit Employees from Providing Information to Congress*, 28 Op. O.L.C. 79, 80–82 (2004). Agencies have a longstanding practice of working with employees and former employees and, when necessary, their counsel, in the course of responding to congressional oversight requests about agency information. As long as the employee's and the agency's interests remain aligned, nothing about the attorney-client relationship between the private counsel and the employee prevents private counsel from working with agency counsel to understand the agency's positions about the oversight inquiry, the proper scope of the deposition or interview, and the potential confidentiality interests implicated by the requested testimony. Private counsel also may convey agency positions or requests to committee staff.

For all of these reasons, we continue to follow the view expressed in our 1983 *Burford I* memorandum that it is ordinarily in the interest of the United States to provide individual-capacity representation for an employee subpoenaed to testify before congressional committees about acts performed within the scope of her employment. *Burford I* at 4 n.4. That

will cease if . . . the Department of Justice . . . [d]etermines that continued representation is not in the interest of the United States.").

presumption applies here because, as we understand the circumstances, the acts that are the basis for the Committees' subpoena were performed within the scope of the employee's official duties.

The normal presumption may not apply where the employee is also the subject of a criminal investigation, has potential civil liability to the United States, or is subject to any adverse action by a federal agency on the basis of the actions under investigation by the congressional committee. *See Representation of White House Employees*, 4B Op. O.L.C. at 750–53; *see also supra* Part II. It is our understanding from HHS that none of these circumstances applies to the subpoenaed employee. Thus, the individual employee does not have any "purely personal" interests in this matter that would preclude the provision of representation at government expense under our previous opinions. The employee does have the kind of "personal" interests described in our 1990 *Reimbursing Department of Justice Employees* opinion, including "avoiding being made an unfair target of congressional criticism," having an opportunity to respond fully to questions, and avoiding possible sanctions under the congressional procedures for refusing to answer the Committees' questions. 14 Op. O.L.C. at 137. But, as we explained in that opinion, these interests are not "purely personal"; they are "incidental" to, and in many cases overlap with, the substantial government interests implicated by a deposition before congressional committees relating solely to acts taken in the course of the employee's official duties. *Id.* Where, as here, the individual employee has only incidental personal interests that largely overlap with the government interests in supporting, informing, and protecting agency employees when they are compelled to testify about their official duties, we conclude that providing the employee with individual representation is permissible, and an expense that an agency may consider necessary to the performance of important agency functions.

## C.

We also conclude that HHS has the statutory authority and an available appropriation to retain and pay for private counsel to represent its employee in the Committees' deposition.[13] HHS, like other federal agencies,

---

[13] You asked for our legal advice about whether HHS may pay for private counsel to represent its employee. Organic statutory authority and an available appropriation to use that authority are necessary for the agency to retain private counsel, which is the issue we

may "procure by contract the temporary . . . or intermittent services of experts or consultants or an organization thereof" if that procurement is "authorized by an appropriation or other statute." 5 U.S.C. § 3109(b); *see Burford I* at 6 n.7 (noting the possibility of utilizing section 3109 to retain private counsel); *Use of White House Funds for Payment of Consultants to Assist Presidential Nominee to Regulatory Agency at Confirmation Hearing*, 2 Op. O.L.C. 376, 377 (1977) ("*Use of White House Funds*") (section 3109 "would thus appear to encompass the employment of outside counsel to assist the nominee if, in your judgment, this would provide expert or professional services not available within the White House Office").[14] Although we have advised in a similar context that section 3109 alone "do[es] not . . . provide the substantive authority" to hire private counsel, we recognized that it does "provide a method of procedure for carrying into effect powers elsewhere granted." *Providing Representation for Federal Employees Under Investigation by the Inspector General*, 4B Op. O.L.C. 693, 695 (1980); *see also* 1 *Federal Appropriations Law* at 4-14 (section 3109 itself "does not authorize an agency to spend general operating appropriations to hire consultants," but requires a specific authorizing appropriation or statute). Section 3109 thus allows an agency to procure the services of an expert or consultant where a condition precedent is met: when that procurement is "authorized by an appropriation or other statute." *See* HHS Letter at 3 (noting that section 3109 is "best regarded as a type of appointment mechanism for certain

---

analyze in this section. However, if the agency lacks such organic authority, but determines that private representation would be in the government's interest, the agency may be able to reimburse its employee for private counsel expenses as "necessary expenses" incurred in furtherance of agency functions. *See Burford II* at 5. As we explained in the Burford matter, however, it would be preferable for the agency to contract directly with the private attorney because doing so "enables the agency to retain control over the terms of the contract, instead of leaving the negotiation of contract terms to individual employees." *Id*. at 6.

[14] The use of section 3109 is permissible only where agency employees are not able to perform the function for which the expert is retained. *See* 5 C.F.R. § 304.103(b)(3)–(5) (prohibiting the use of section 3109 to appoint an expert or consultant to "function in the agency chain of command," to "do work performed by the agency's regular employees," or to "fill in during staff shortages"); *Employment of Temporary or Intermittent Attorneys and Investigators*, 3 Op. O.L.C. 78, 78–79 (1979) ("[I]n our view, this appropriation may not be used to hire employees to perform the same functions as are performed by regular employees in your Office.").

Government employees when Congress has provided express authorization for its use").

HHS has a specific statutory authorization that enables it to use an appropriation for the purpose of hiring consultants under section 3109. In the Fiscal Year 1993 HHS appropriations act, Congress included a permanent authorization providing that HHS appropriations that are "available for salaries and expenses . . . shall be available for services as authorized by 5 U.S.C. 3109." Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-394, 106 Stat. 1792, 1825 (Oct. 6, 1992) ("FY 1993 Authorization"); HHS Letter at 3. We understand this provision to provide the necessary substantive authority for HHS to use available appropriations to contract for services "as authorized by" section 3109, that is, pursuant to the conditions and prohibitions set forth in section 3109 and its implementing regulations. *See* 5 U.S.C. § 3109(b), (c), (d) (limiting the contract to one year, prohibiting the filling of certain positions under the authority granted, and directing the Office of Personnel Management to promulgate regulations "necessary for the administration" of the section); 5 C.F.R. pt. 304 (setting forth regulations governing agencies' use of section 3109, including compensation and reporting requirements). Numerous opinions of this Office, the Comptroller General, and other bodies support that conclusion. *See, e.g.*, *Use of White House Funds*, 2 Op. O.L.C. at 376 (noting that a current White House appropriation for "services as authorized by section 3109" "authorize[d] the hiring of consultants"); *Charles R. Hobbes Corp.*, B-191865, 1978 WL 11030, at 2 (Comp. Gen. Nov. 13, 1978) (concluding that a Department of Interior appropriation, which made funds available to contract "for services as authorized by 5 U.S.C. 3109," *see* Pub. L. No. 95-74, § 104, 91 Stat. 295, 297 (July 26, 1977), "specifically permitted" the agency "to procure such services by contract or appointment"); *Lovoy v. Dep't of Health & Human Servs.*, 94 M.S.P.R. 571, 576–77 (2003) (stating that HHS's FY 1993 Authorization permits HHS to use appropriations to pay experts and consultants appointed under section 3109 at a particular pay rate).[15] Accordingly, the FY 1993 Au-

---

[15] In the course of our analysis, we considered whether the phrase "as authorized by section 3109," as used in the FY 1993 Authorization, should be interpreted to authorize the expenditure of appropriations only in circumstances in which section 3109 *itself* authorizes using appropriated funds to contract for services. We rejected that interpretation, however, because it would render the FY 1993 Authorization a nullity. As noted

thorization permits HHS to use funds available to pay for salaries and expenses to contract for the services of a private counsel pursuant to section 3109.

HHS also has a current appropriation available for salaries and expenses that it can use to pay for private counsel. In the 2016 Consolidated Appropriations Act, HHS received an appropriation "[f]or necessary expenses, not otherwise provided, for general department management." Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242, 2617 (Dec. 18, 2015). HHS has informed us that this appropriation is available to pay for salaries and expenses; it is thus also available under the FY 1993 Authorization to contract for services as authorized by section 3109. Because, as discussed above, the provision of private representation is in the government's interest, the testimony of the employee relates solely to actions taken within the scope of her official duties, and agency counsel cannot be present, *see supra* Parts III.A–B, HHS may permissibly conclude that contracting for the services of a private attorney to represent its employee is a "necessary expense" that "bears a logical relationship to the objectives of [its] general appropriation." *Indemnification of Department of Justice Employees*, 10 Op. O.L.C. at 8. Funds from the 2016 appropriation therefore are available under the FY 1993 Authorization to contract for the temporary service of an outside counsel pursuant to section 3109.[16]

---

above, section 3109 does not itself authorize any action, but instead is contingent on authority provided in appropriations provisions or other statutes. Consistent with the canon against construing statutory provisions to be "superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted), the construction of the phrase "as authorized by section 3109" that we adopt here gives the FY 1993 Authorization operative effect. That construction is also consistent with both the Executive Branch's and the Comptroller General's historical interpretations of the identical phrase in other appropriations provisions.

[16] HHS, and other agencies that face circumstances similar to those that are the basis for this opinion, may benefit from consulting with the Civil Division about its administration of the Department of Justice's private counsel retention program. Civil Division Directive 2120B implements the Department's individual-capacity representation regulations, 28 C.F.R. §§ 50.15, 50.16, and currently includes, among other provisions, a fee limitation of $300 per hour, plus expenses, for private representation. *See* Civil Division, Dep't of Justice, Administrative Directive 2120B, *Retention and Payment of Private Counsel* at 13 (Oct. 1, 2016). The Civil Division encourages interagency coordination so that the Executive Branch continues to be able to retain private counsel where necessary at appropriate rates and in accordance with uniform standards of representation.

## **IV.**

For the reasons set forth above, we concluded in our prior oral advice that, in these circumstances and under the Committees' procedures governing depositions, HHS may retain and pay for private counsel to represent its employee in the deposition.

GINGER D. ANDERS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*